698 F.2d 606
 9 Ed. Law Rep. 45
 Dennis GOETZ, Plaintiff-Appellant,
v.
WINDSOR CENTRAL SCHOOL DISTRICT, Jerald K. Quimby,
Superintendent of Schools, Officially and in his individual
capacity, Ellen R. Skoviera, School Business Executive,
Officially and in her individual capacity, James Decker,
Supervisor, Officially and in his individual capacity, Leo
Mulcahy, Supervisor, Officially and in his individual
capacity, Defendants-Appellees.
 No. 485, Docket 82-7521.
 United States Court of Appeals,
Second Circuit.
 Submitted Dec. 9, 1982.
Decided Jan. 24, 1983.
 
 Ronald R. Benjamin, Binghamton, N.Y., filed a brief for plaintiff-appellant.
 Frank W. Miller, Binghamton, N.Y. (Coughlin & Gerhart, Binghamton, N.Y., of counsel), filed a brief for defendants-appellees.
 Before KAUFMAN, TIMBERS and CARDAMONE, Circuit Judges.
 CARDAMONE, Circuit Judge:
 
 
 1
 Alleging a deprivation of property and liberty interests without due process of law, Dennis Goetz commenced this action under 42 U.S.C. Sec. 1983 against the Windsor Central School District [School District] and four of its officials. The officials Jerald Quimby, Superintendent of Schools, Ellen Skoviera, School Business Executive, James Decker, Supervisor and Leo Mulcahy, Supervisor, were sued in both their official and individual capacities. The United States District Court for the Northern District of New York (McCurn, J.) granted defendants' motion for summary judgment. We affirm as to the claimed deprivation of a property interest and reverse and remand to permit discovery on the claimed deprivation of a liberty interest.
 
 FACTS
 
 2
 In October 1979 the School District appointed Dennis Goetz to the position of "cleaner." One year later School District officials became aware of a series of thefts which had been occurring at the district offices. The New York State Police were notified and a formal investigation commenced. Shortly thereafter plaintiff was arrested and charged with third degree burglary.
 
 
 3
 On January 10, 1981 Goetz was suspended by the School District because of his alleged participation in these break-ins. Two days later Skoviera sent Goetz a letter requesting a full written explanation of his involvement in the matter. Goetz's application for an extension of time to respond was granted by Skoviera, but the record indicates that he never responded to Skoviera's letter. On January 19, 1981 plaintiff, through the attorney representing him in the criminal proceedings, wrote Skoviera indicating that Goetz had been suspended without an opportunity to be heard, in violation of his constitutional rights, and requesting an opportunity to be heard. However, as a result of not receiving a written explanation from Goetz, the School District terminated his employment on January 22. No information regarding the reasons for Goetz's termination from employment was placed in his personnel file.
 
 
 4
 On January 12, the same day that Skoviera wrote Goetz, she also circulated a memo to Supervisors Decker and Mulcahy directing that they and their staffs maintain the strictest confidentiality regarding the recent events at the School. No direct mention of Goetz was contained in that memo.
 
 
 5
 In March 1981 the burglary charge against plaintiff was reduced to a misdemeanor and he was granted an adjournment in contemplation of dismissal pursuant to New York Criminal Procedure Law Sec. 170.55 (McKinney 1982).
 
 
 6
 On October 6, 1981 plaintiff instituted the present action charging that defendants had deprived him of property and liberty interests without due process of law. Granting a defense motion for summary judgment, the district court held that plaintiff possessed no protectable property interest under either New York law or the terms of his collective bargaining agreement, and that plaintiff had not demonstrated a protected liberty interest because he was unable to show that the defendants publicized the allegedly false and defamatory information. In light of his summary rejection of plaintiff's claims, the district judge found discovery to be unnecessary. The trial court also held that plaintiff had been given an opportunity to be heard under the terms of the collective bargaining agreement, but had declined to exercise that right. It also denied, as moot, plaintiff's motion to add former School District Attorney John Hogan as a party defendant. Plaintiff appeals from the grant of summary judgment and denial of his motion to add Hogan as a defendant.
 
 PROPERTY INTEREST
 
 7
 Before one may be deprived of property the Fourteenth Amendment mandates that the dictates of due process be satisfied. Some property interest must exist in favor of the person seeking shelter under the Amendment's broad umbrella. In deciding whether a person possesses a property interest a court must carefully sift through abstract needs and unilateral expectations until it locates a legitimate claim of entitlement. Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). The source of such interests are not to be found in the Constitution. Rather their existence and dimensions are defined by "existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Id. Thus, a property interest in employment can be created by local ordinance or by implied contract. Bishop v. Wood, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). In either case, the sufficiency of the claim of entitlement rests on state law.
 
 
 8
 Plaintiff concedes that he possesses no protectable property interest under New York State's Civil Service Law. His position of "cleaner" is classified in the regulations as an unskilled labor position covered by section 42 of the Civil Service Law (McKinney 1973). 4 N.Y.C.R.R.App. 3 (1982). New York law provides that after five years of service such employees may only be removed for incompetency or misconduct and must be afforded a hearing before removal. N.Y.Civ.Serv.Law Sec. 75 (McKinney 1973). As an unskilled laborer with less than five years of service plaintiff's position was one terminable at will.
 
 
 9
 Supreme Court cases make clear that at will employees possess no protectable property interest in continued employment. In Roth, the Court noted that a person may possess a protected property interest in public employment if contractual or statutory provisions guarantee continued employment absent "sufficient cause" for discharge. 408 U.S. at 578, 92 S.Ct. at 2709. Even a de facto system of tenure, if proved, is sufficient to create a property interest. See Perry v. Sindermann, 408 U.S. 593, 602-03, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972). In Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974) the issue was how much due process should be accorded a nonprobationary federal employee who could be discharged only for cause. The plurality held that when an employee may only be removed for cause a statutory expectancy exists which creates a property interest in favor of the employee. Id. at 151-52, 94 S.Ct. at 1642-1643. The concurring opinion reached essentially the same result--"[n]o property interest [is] conferred ... where the applicable statutory or contractual terms, either expressly or by implication, [do] not provide for continued employment absent 'cause.' " Id. at 167 n. 2, 94 S.Ct. at 1650 n. 2 (Powell, J. concurring). Taking this analysis to its logical conclusion the Supreme Court in Bishop upheld a finding of no protected property interest where, under state law, the employee "held his position at the will and pleasure of the [employer]." 426 U.S. at 345, 96 S.Ct. at 2077. See also White v. Mississippi State Oil and Gas Board, 650 F.2d 540, 542 (5th Cir. Unit A 1981); Beitzell v. Jeffrey, 643 F.2d 870, 874 (1st Cir.1981).
 
 
 10
 Plaintiff urges that a property interest arises from Article 9 of his collective bargaining agreement which provides that:
 
 
 11
 In the case of employee release, at least one-day notice of release and reasons for such action to incorporate evaluation reports will be given to the employee. The employee, if he/she feels such reasons for release are essentially inadequate or inaccurate, may request an immediate audience with the Chief School Administrator, or his designee, to explain his/her reasons for contradicting the release order.
 
 
 12
 Goetz argues that where reasons for discharge must be provided to the employee, as here, the employer must come forward and justify the termination. He claims that the collective bargaining agreement changed his status from an employee who served at will to one who could be discharged solely for cause. For this contention plaintiff relies upon In re King v. Sapier, 47 A.D.2d 114, 364 N.Y.S.2d 652 (4th Dep't 1975), aff'd, 38 N.Y.2d 960, 384 N.Y.S.2d 152, 348 N.E.2d 609 (1976).
 
 
 13
 In our view neither King nor the collective bargaining agreement supports plaintiff's argument. King dealt with the requisite notice to be afforded a probationary state employee under New York's Civil Service regulatory scheme. The court found little justification for expanding the notice requirement of Section 4.5 of the Rules and Regulations of the Department of Civil Service to include notice of unsatisfactory performance "when, in the status which he then occupies, the probationer may not compel the appointing authority to justify the termination." King, 47 A.D.2d at 117, 364 N.Y.S.2d 652. As the court in King recognized, it is the employee's status which determines whether he has a legitimate expectation of future employment. The mere fact that an employer may be required to notify an employee of the reasons for discharge does not alter the employee's status. While a collective bargaining agreement may add to an employee's procedural rights, and even create a property interest in continued employment, nothing in the relevant agreement altered Goetz's status as an at will employee. Because he possessed no property interest in his employment, plaintiff's claim that he was denied due process of law for lack of a hearing must fail.
 
 LIBERTY INTEREST
 
 14
 Liberty as guaranteed by the Fourteenth Amendment denotes the right of the individual to engage in the common occupations of life and to enjoy privileges recognized as essential to the orderly pursuit of happiness. Board of Regents v. Roth, 408 U.S. at 572, 92 S.Ct. at 2706. Under the Constitution its meaning must be "broad indeed." Id. A liberty interest is therefore implicated and a name-clearing hearing required where an employer creates and disseminates a false and defamatory impression about an employee in connection with the employee's termination. See Codd v. Velger, 429 U.S. 624, 628, 97 S.Ct. 882, 884, 51 L.Ed.2d 92 (1977); cf. Bishop v. Wood, 426 U.S. at 348, 96 S.Ct. at 2079 (where defamatory information connected with a discharge is not made public it cannot form the basis of a liberty interest claim); Paul v. Davis, 424 U.S. 693, 709-10, 96 S.Ct. 1155, 1164, 47 L.Ed.2d 405 (1976) (defamation by state official does not give rise to Sec. 1983 claim where it did not occur in the course of termination of employment). In viewing this record there is no question but that the allegation that plaintiff is a thief is stigmatizing information which arose in connection with plaintiff's discharge. The factual issue as to whether this information is true or false cannot be resolved on a motion for summary judgment. Thus, plaintiff should be prevented from proceeding with his case at this stage of the litigation only if defendants have conclusively demonstrated that they did not disseminate the stigmatizing impression that plaintiff was fired because he is a thief. See Codd v. Velger, 429 U.S. at 628, 97 S.Ct. at 884.
 
 
 15
 In this connection defendants supplied affidavits attesting to their efforts to keep the defamatory information secret. Plaintiff, on the other hand, presented affidavits indicating that many of his fellow townspeople were fully aware of the allegation of thievery. Some of the information concerning thievery may have arisen from the public nature of plaintiff's arrest and handcuffing while on school premises. It may well turn out that the public in this small community came upon this stigmatizing impression from sources other than the defendants; but, alternatively, it may be established that school district employees or board members were in fact responsible for public awareness of the allegedly defamatory charge made against plaintiff. If so, notice and an opportunity to be heard are essential to protect his due process rights. See Wisconsin v. Constantineau, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971).
 
 
 16
 We are satisfied that, granting plaintiff every reasonable intendment to be derived from the allegations in his papers opposing summary judgment, he has raised factual issues regarding the deprivation of a liberty interest which may not properly be resolved without benefit of discovery. Plaintiff should be permitted to depose defendants and otherwise seek discovery on the issue of public dissemination of the stigmatizing impression allegedly circulated by defendants. See generally Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 446-47 (2d Cir.1980).
 
 
 17
 We hold, finally, that plaintiff's failure to take advantage of the opportunity to provide an explanation for his alleged involvement in this affair does not constitute a waiver of his right to assert a due process claim. If it is found that Goetz was deprived of a liberty interest, he may well be entitled to more due process than the procedure under the collective bargaining agreement afforded him. Failure to take advantage of that procedure may not, therefore, be interpreted as a waiver of the full due process to which he would be entitled.
 
 
 18
 The matter is remanded therefore for further proceedings consistent with this opinion with the added direction that the district court reconsider plaintiff's motion to amend his complaint since that issue is no longer moot.