Kathleen E. SARACENO, Plaintiff,

v.

CITY OF UTICA; Board of Water Supply of the City of Utica; Thomas J. Nelson, Individually and in his official capacity as Comptroller of the City of Utica; Blake E. Ford, Individually and in his official capacity as Deputy Comptroller of the City of Utica; Robert Pierce, Individually and in his official capacity as Chairman of the Board of Water Supply of the City of Utica; Frank Dulan, Individually and in his official ca-

pacity as Commissioner of the Board of Water Supply of the City of Utica; and Edwin Smith, Individually and in his official capacity as Commissioner of the Board of Water Supply of the City of Utica, Defendants.

No. 86–CV–600.

United States District Court, N.D. New York.

March 14, 1990.

Seidenberg, Strunk & Goldenberg, Syracuse, N.Y., for plaintiff; Faith A. Seidenberg, of counsel.

Albert A. Alteri, Corp. Counsel Utica, N.Y., for defendants; Charles N. Brown, of counsel.

## ORDER

McAVOY, District Judge.

In response to the amended complaint filed in this action arising out of the transfer of management and control of the data processing unit of the City of Utica Board of Water Supply to the City Comptroller and the removal of plaintiff from the position of Data Processing Supervisor, defendants move for summary judgment dismissing plaintiff's four remaining federal claims and her three pendent State law claims. For the reasons that follow, the court grants in part and denies in part the defendants' motion.

Essentially, plaintiff alleges that, commencing in 1985, at which time plaintiff was the Data Processing Supervisor for the Board of Water Supply by a provisional appointment on March 27, 1985 in accordance with New York Civil Service Law procedures, Republican Party members of the City of Utica conspired to gain control of the Water Supply Board Data Processing department and to oust plaintiff from her position in retaliation for complaints she made regarding the functioning of the Water Supply Board and for actions by her father, at that time a Democrat on the Board.

Briefly, in January 1986, defendant Thomas J. Nelson, the City Comptroller, allegedly threatened plaintiff with suspension because of comments she had made to her father regarding instructions she and other staff members received directing them to change the payroll records of Water Supply Board employees so that these employees would be on the City of Utica payroll. Plaintiff also made a number of complaints about certain matters relating to the Water Supply Board and the data processing staff; in this regard, a letter signed by plaintiff and her co-workers was sent to the Water Supply Board Commissioners and to Mr. Nelson. In late January 1986, Mr. Nelson suspended plaintiff and the entire staff without pay allegedly for "insubordination and misconduct."

On February 21, 1986, plaintiff was informed that she had passed the New York Civil Service promotional examination for Data Processing Supervisor and that she was the only person eligible for that position. Four days later, but prior to the completion of her 9 months' provisional appointment, plaintiff was formally removed from the position of Data Processing Supervisor and demoted to the permanent position of Computer Operator. On March 3, 1986, although apparently previously informed otherwise, and although apparently told that she would be suspended with pay from this position, plaintiff was told that no charges would be preferred against her, that she should report for work on March 6, and that the "suspension" would be lifted on March 6. Plaintiff, however, placed herself on medical disability leave, allegedly because of physical illness and disability exacerbated by defendants' actions, and never returned to work for the City. Soon thereafter, plaintiff sought employment elsewhere and was subsequently hired by the Grumman Aircraft Corporation as a Computer Systems Analyst in June 1986 (a position which apparently involved confidential Department of Defense work) at a salary of $31,000, which was more than her Data Processing Supervisor salary.

The present action was commenced in May 1986; following motion practice before this court in 1987 directed at the original complaint, the declaration of a mistrial by the late Judge MacMahon in 1988, and reconsideration of Judge MacMahon's order dismissing the case for failure to prosecute, a somewhat streamlined amended complaint was filed on December 8, 1988.

Defendants have moved for summary judgment dismissing this amended pleading.

## A. Federal law claims

 As an initial matter, all four of the remaining five federal causes of action are dismissed as against the City of Utica and the Board of Water Supply. The doctrine of respondeat superior cannot serve as the basis of liability against these two municipal defendants and the amended complaint is devoid of any allegations, and there is no proof, of unconstitutional conduct effected through or undertaken pursuant to any municipal policy or custom. *See City of Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) (plurality opinion); *Monell v. New York City Dep't of Social Services,* 436 U.S. 658, 690–691, 98 S.Ct. 2018, 2035–2036, 56 L.Ed.2d 611 (1978). All that remains then are plaintiff's claims against the individual defendants.

 In her first cause of action, plaintiff claims entitlement to the position of Data Processing Supervisor and to continued employment as permanent Computer Operator and asserts that she was impermissibly deprived of her property interests without due process of law. These claims have no merit and summary judgment dismissing them is warranted. First, plaintiff left her permanent Computer Operator position voluntarily; she was not dismissed. Moreover, even if plaintiff left under circumstances indicating a constructive discharge (which was not the case, as is explained below), it is difficult, if not impossible, to understand how plaintiff could have been accorded a hearing prior to her leaving her employment. *See Zinermon v. Burch,* — U.S. —, ——–——, 110 S.Ct. 975, 985–988, 108 L.Ed.2d 100 (1990). Second, under New York law successful completion of a civil service examination does not create a property interest in appointment to the position for which the applicant has applied, *Matter of Deas v. Levitt,* 73 N.Y.2d 525, 532, 541 N.Y.S.2d 958, 962, 539 N.E.2d 1086, 1090 (1989), and plaintiff's provisional appointment on March 27, 1985 to the position of Data Processing Supervisor did not ripen into a permanent appointment under New York Civil Service Law § 65(4) and hence plaintiff acquired no rights under New York law accorded to persons having permanent Civil Service status, *see Matter of Preddice v. Callanan,* 69 N.Y.2d 812, 813–814, 513 N.Y.S.2d 958, 959, 506 N.E.2d 529, 530 (1987). Plaintiff was not continued in or reappointed to the Data Processing Supervisor position after the expiration of the authorized period of original provisional appointment, N.Y.Civ. Serv.L. § 65(4) (McKinney 1983), and the mere continuation in the provisional position at the end of the original nine-month period, even if that had been the case, is insufficient in and of itself to convert a provisional appointment into a permanent appointment, *see Matter of Becker v. New York State Civil Service Comm'n,* 61 N.Y.2d 252, 257, 473 N.Y.S.2d 374, 376, 461 N.E.2d 860, 862 (1984), given that the New York Court of Appeals has held that section 65(4) is only applicable when "an examination for a position ... fails to produce a list adequate to fill all positions then held on a provisional basis, or where such list is exhausted immediately following its establishment," *id.* at 256, 257, 473 N.Y.S.2d at 375, 376, 461 N.E.2d at 861, 862; *Matter of Haynes v. County of Chautauqua,* 55 N.Y.2d 814, 816, 447 N.Y.S.2d 430, 431, 432 N.E.2d 132, 133 (1981). Here, there has been no showing that the eligible list was inadequate or immediately exhausted within the meaning of *Becker. See* 61 N.Y.2d at 256–257, 473 N.Y.S.2d at 375–376, 461 N.E.2d at 861–862.

 Plaintiff's second cause of action advances a claim under *Pickering v. Board of Educ.,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983) and *Mount Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), that plaintiff was retaliated against and removed from her position as Data Processing Supervisor because of the exercise of her 1st amendment right to freedom of speech. The focus of the parties' dispute here is the January 22 letter that the staff of the Data Processing Unit sent to

Mr. Nelson and to the Water Supply Board Commissioners. Review of that letter, alone and in context to take into account the surrounding circumstances, reveals that it did not deal with matters of public concern. *See Rankin v. McPherson,* 483 U.S. 378, 107 S.Ct. 2891, 2896–2898, 97 L.Ed.2d 315 (1987); *Connick,* 461 U.S. at 147–150, 103 S.Ct. at 1690–1691; *Giacalone v. Abrams,* 850 F.2d 79, 86 (2d Cir. 1988); *Rookard v. Health and Hospitals Corp.,* 710 F.2d 41, 46 (2d Cir.1983). The letter in substantial part reflects employees' dissatisfaction with the way they have been treated, voices concern over the possible loss of employment through the elimination of their positions because of a move toward greater efficiency (included here are some snide comments implying that the services the Data Processing staff provides for the Water Supply Board are invaluable and are, in any event, more important than whatever services the Comptroller's office provides) and points out that employee morale is, as a result of the foregoing, low. These complaints do not fall under the rubric of matters of "public concern." *See Connick,* 461 U.S. at 148–149, 103 S.Ct. at 1690–1691; *Giacalone,* 850 F.2d at 86. Additionally, although plaintiff would have it otherwise, the letter does not reflect any concern that public officials had improperly created and filled civil service positions. Rather, the letter points out that two persons appointed to positions within the Data Processing Unit do not have permanent civil service status.

In view of the foregoing, because the letter did not touch upon matters of public concern and hence does not enjoy 1st amendment protection under the *Pickering* line of cases, *see Giacalone,* 850 F.2d at 86, defendants' motion for summary judgment dismissing the second cause of action is granted.

■ In her third cause of action, plaintiff alleges that she was retaliated against because of her political associations, yet there are no allegations or evidence that she had any political affiliations. In fact, the record reveals that plaintiff admitted that she had none and that she was basically relying on her father's political affiliation as a Democrat in a Republican municipal administration. Nevertheless, in order for plaintiff to prevail on this cause of action grounded on freedom of association, all that she need prove is that she was dismissed from her duties as a Data Processing Supervisor "solely for the reason that [she was] not affiliated with or sponsored by the [Republican] Party." *Branti v. Finkel,* 445 U.S. 507, 517, 100 S.Ct. 1287, 1294, 63 L.Ed.2d 574 (1980) (quoting *Elrod v. Burns,* 427 U.S. 347, 350, 96 S.Ct. 2673, 2678, 49 L.Ed.2d 547 (1976)) (plurality opinion); *see also Lieberman v. Reisman,* 857 F.2d 896, 897–900 (2d Cir.1988). Defendants do not argue that political affiliation was a legitimate consideration for continued employment as the Data Processing Supervisor, *see Branti,* 445 U.S. at 519, 100 S.Ct. at 1295; rather, defendants argue that they have clearly shown adequate justification for plaintiff's dismissal from that position. In the court's view, whether plaintiff was dismissed solely for the reason that she was not affiliated with the Republican Party is a matter better left for further development at trial. The court adds that defendants' argument that they have qualified immunity with respect to this claim is without merit inasmuch as the law in this area was clearly established at the time of plaintiff's removal from the Data Processing Supervisor position in 1986, particularly given that defendants do not argue that political affiliation was a legitimate consideration for continued employment as a Data Processing Supervisor. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Giacalone v. Abrams,* 850 F.2d 79, 85 (2d Cir.1988); *Hawkins v. Steingut,* 829 F.2d 317, 320 (2d Cir.1987). Summary judgment dismissing this cause of action is, therefore, not proper.

For her fourth cause of action, plaintiff asserts that she has been stigmatized by false charges published about her relating to her suspension and demotion and that she was thereby deprived of a liberty interest without due process of law. In newspaper articles relied on by plaintiff, Mr. Nelson is quoted as saying that plaintiff and

her co-workers had been suspended for insubordination and misconduct and that one of the main reasons why they had been suspended was a letter sent to the Water Supply Board criticizing him and stating that they did not want to work for him. For the reasons that follow, this cause of action must be dismissed.

 A government employee's liberty interest may be implicated where the government dismisses her on charges that might seriously damage her standing and associations in the community or that might impose on her a stigma or other disability that forecloses her freedom to take advantage of other employment opportunities. *Board of Regents v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972); *Brandt v. Board of Cooperative Educational Services*, 820 F.2d 41, 43 (2d Cir.1987); *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 446 (2d Cir.1980). To constitute a deprivation of a liberty interest, however, the charges (a) must have been, in some manner, made public during the course of, or contemporaneous with, the discharge, *Bishop v. Wood*, 426 U.S. 341, 348–349, 96 S.Ct. 2074, 2079–2080, 48 L.Ed.2d 684 (1976); *Paul v. Davis*, 424 U.S. 693, 710, 96 S.Ct. 1155, 1165, 47 L.Ed.2d 405 (1976), and (b) must be alleged to have been false, *Codd v. Velger*, 429 U.S. 624, 627, 97 S.Ct. 882, 883, 51 L.Ed.2d 92 (1977) (per curiam); *Brandt*, 820 F.2d at 43.

 Even assuming that plaintiff's removal from the Data Processing Supervisor position, which was not a termination from public employment, could give rise to a cognizable liberty interest claim, *see Baden v. Koch*, 799 F.2d 825, 830–831 (2d Cir.1986), plaintiff's claim here fails essentially because the charges of insubordination and misconduct reported in the press and the alleged charge of incompetence made against her during the course of the February 3, 1986 Water Supply Board Commissioners meeting (actually the charge was "inappropriate management," *see* Minutes of Feb. 3, 1986 meeting, Original Complaint, Exhibit 7 (unpaginated)) are simply not stigmatizing or suffi-

ciently damaging to implicate a liberty interest under the *Roth* line of cases. *See Capers v. Long Island R.R.*, 429 F.Supp. 1359, 1368–1369 (S.D.N.Y.), *aff'd without opinion*, 573 F.2d 1291 (2d Cir.1977); *see also Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971); *Russell v. Hodges*, 470 F.2d 212, 217 (2d Cir.1972). All the more is this so given that soon after plaintiff left the employ of the city she secured a job as a Computer Systems Analyst with Grumman Aircraft Corp. which paid her more than did her Data Processing Supervisor job and which according to plaintiff was a position requiring some measure of confidentiality. *See* EBT of Kathleen Saraceno at 79–80 (describing her job as "Black Environment Department of Defense Work").

Defendants' motion for summary judgment dismissing this cause of action is, therefore, granted.

**B. State law claims**

As an exercise of its discretion to pass on State law claims presented to the court under pendent jurisdiction, the court determines that the motion of all the defendants for summary judgment dismissing causes of action six, seven and eight must be granted.

 The cause of action for intentional infliction of emotional distress fails because plaintiff has not presented any evidence to create a triable issue of fact that the individual defendants engaged in conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Murphy v. American Home Products*, 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 236, 448 N.E.2d 86, 90 (1983).

Whether stylized as tortious interference with contractual relations or as *prima facie* tort, plaintiff's seventh cause of action fails as a matter of law. The requisite elements of neither tort have been pled, *see Smukler v. 12 Lofts Realty, Inc.*, 548 N.Y. S.2d 437, 438 (1st Dep't 1989); *see also*

*Ingle v. Glamore Motor Sales, Inc.,* 73 N.Y.2d 183, 201–202, 538 N.Y.S.2d 771, 782, 535 N.E.2d 1311, 1322 (1989) (Hancock, J., dissenting), and plaintiff has presented no evidence which would support a sufficiently pled cause of action.

 Lastly, plaintiff's sixth cause of action alleging violations of various provisions of the New York Civil Service Law must also be dismissed. Plaintiff lacks standing to challenge the job classification and the assignment of duties of persons other than herself. *See Matter of Burke v. Bahou,* 91 A.D.2d 705, 457 N.Y.S.2d 599, 600 (3d Dep't 1982). Plaintiff voluntarily left her permanent position as Computer Operator and did not leave as a result of such intolerable conditions as to amount to a constructive discharge. *See, e.g., Matter of Imperial Diner, Inc. v. State Human Rights Appeal Board,* 52 N.Y.2d 72, 78–79, 436 N.Y.S.2d 231, 417 N.E.2d 525 (1980); *Ioele v. Alden Press, Inc.,* 145 A.D.2d 29, 536 N.Y.S.2d 1000, 1004 (1st Dep't 1989). And, as noted above in relation to plaintiff's assertion of a property interest in her entitlement to permanent appointment as Data Processing Supervisor, plaintiff did not acquire permanent status under New York Civil Service Law § 65(4); hence, plaintiff was not deprived of rights under New York Civil Service Law § 75.

In sum, as a result of defendants' motion for summary judgment seeking dismissal of the amended complaint, all that remains is the third cause of action insofar as it is asserted against the individual defendants. The remainder of the complaint is dismissed.

IT IS SO ORDERED.