**Wanda RECCHIA–HANSEMANN,**
**Plaintiff,**

**v.**

**BOCES, First Supervisory District**
**of Suffolk County, Defendant.**

**No. 94–CV–4602(JG).**

United States District Court,
E.D. New York.

Oct. 6, 1995.

108

Lane T. Maxson, Pelletreau & Pelletreau, L.L.P., Melville, New York, for Plaintiff.

Stanley A. Camhi, Jaspan, Ginsberg, Schlesinger, Silverman & Hoffman, Garden City, New York, for Defendant.

*MEMORANDUM AND ORDER*

GLEESON, District Judge:

The plaintiff, Wanda Recchia–Hansemann, has brought an action pursuant to 42 U.S.C. § 1983 against the Board of Cooperative Education Services (BOCES). Recchia–Hansemann claims that her due process rights were violated when BOCES terminated her employment as a school nurse. She also asserts that BOCES' action breached a collective bargaining agreement, a claim over which this Court has supplemental jurisdiction. BOCES has moved to dismiss Recchia–Hansemann's complaint. For the reasons set forth below, the motion is granted.

**Background**

In September of 1991, Recchia–Hansemann became employed by BOCES as a part-time registered nurse. Three months later, she was promoted to a full-time position. As a school nurse, Recchia–Hansemann occupied a "noncompetitive" class position under New York State Civil Service Law. N.Y.Civ.Serv.Law § 75 (McKinney 1983). She also became a member of the United Public Service Employees Union, Local 424 (the "Union").

According to BOCES, Recchia–Hansemann's work performance began to suffer in February of 1993. On April 6, 1994, Recchia–Hansemann was suspended with pay and given a formal "Notice of Hearing" and a four-page statement of charges against her. The statement alleged 18 acts of insubordination and incompetence and informed Recchia–Hansemann that she had a right to a hearing pursuant to the collective bargaining

agreement entered into between the Union and BOCES.

Recchia–Hansemann was provided with an attorney by the Union, and her attorney requested a postponement of the hearing date so that he could further investigate BOCES' allegations. The postponement was granted. Approximately nine days before the hearing, Recchia–Hansemann retained her own counsel to represent her. Counsel sent a letter to BOCES containing nine document requests:

1. Copies of all Ms. Recchia–Hansemann's personnel files;

2. Any transcript, notes, memoranda, or other written record of the meeting of April 6, 1994;

3. A copy of the letter of February 8, 1993 purportedly written by Ms. Recchia–Hansemann to John D.'s parents;

4. Copies of all medical records and medication records for each student listed in the charges;

5. Copies of all weekly medication records maintained by Ms. Recchia–Hansemann, and any substitute, for the 1992–93 and 1993–94 school years;

6. Copies of all weekly medication cards (both sides) for all students seen by Ms. Recchia–Hansemann for the 1992–1993 and 1993–1994 school years;

7. Copies of all school attendance records, daily attendance sheets, 3–day cards and daily attendance cards for the 1992–93 and 1993–94 school years;

8. The "sign-out" book for the main office for the 1992–93 and 1993–94 school years;

9. Copies of all incident reports for all students identified in the charges of the 1992–93 and 1993–94 school years.

(Complaint, ¶ 12.)

With the exception of Recchia–Hansemann's personnel file, BOCES declined to provide any of these documents. The next day, BOCES filed amended charges containing nine additional acts of insubordination and incompetence against the plaintiff.

Taken together, the charges against Recchia–Hansemann can be categorized as in-subordination (failing to follow the principal's directives) and three forms of incompetence: the substandard maintenance of student medical records; the inadequate control and monitoring of student medications; and the failure to follow good general medical practices.

Recchia–Hansemann's attorney called BOCES prior to the hearing and asked if a record of the proceedings would be kept. BOCES responded that no record would be kept. On April 29, 1994, Recchia–Hansemann and her attorney appeared at the hearing with a stenographer. At the commencement of the hearing, Recchia–Hansemann's attorney raised various procedural points. He asked if he would be entitled to cross-examine witnesses, and was assured that he would. He asked if he would be entitled to call witnesses, and was assured that he would. He asked if the hearing could be recorded by the stenographer, and was told that it could, but Recchia–Hansemann would have to pay for her services. He renewed his discovery requests, and was informed by the hearing officer that he would only have access to documents introduced at the hearing. Finally, Recchia–Hansemann's attorney requested the opportunity to examine the independent hearing officer about his impartiality. That request was denied.

At that point, the attorney requested a continuance to allow him to seek the relief denied by the hearing officer from a federal court. That request was also denied, and Recchia–Hansemann and her attorney abruptly left the hearing with the promise that "we'll see you in court." (Compl., Ex. F at 39.) The hearing was conducted *in absentia* (with no transcript being made), and Recchia–Hansemann's employment was terminated.

## Discussion

In order to allege a violation of her due process rights, Recchia–Hansemann must establish that she has suffered a deprivation of a constitutionally protected liberty or property interest. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 570–71, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972); *Gagliardi v. Village of Pawling,* 18 F.3d 188, 193 (2d Cir.1994). Recchia–Hansemann claims that

by firing her, BOCES unconstitutionally interfered with her property and liberty interests. (Compl., ¶ 33.) In its motion to dismiss, BOCES argues that Recchia–Hansemann has not alleged an interference with a cognizable property or liberty interest. BOCES also argues that even if Recchia–Hansemann did have a property or liberty interest, she has already been accorded sufficient due process. For the reasons set forth below, I agree with BOCES' contention that Recchia–Hansemann's complaint fails to allege the existence of a cognizable due process right.

A. *The Alleged Property Interest*

 BOCES' first argument is that Recchia–Hansemann has failed to allege a property interest cognizable under the Fourteenth Amendment.

> The source of such interests are not to be found in the Constitution. Rather, their existence and dimensions are defined by "existing rules or understanding that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."

*Goetz v. Windsor Central School District,* 698 F.2d 606, 608 (2d Cir.1983) (citations omitted). State statutes, local ordinances, and implied contracts all constitute independent sources capable of creating a property interest. The sufficiency of any such claim of entitlement will turn on state law. *Id.*

 Government employees can have a property interest cognizable under the Fourteenth Amendment in their employment. However, a property interest in employment cannot arise for "at-will" employees. A cognizable property interest is created only when the government has restricted its ability to discharge an employee. *Roth,* 408 U.S. at 578, 92 S.Ct. at 2709; *Mack v. United States,* 814 F.2d 120, 123 (2d Cir.1987). Such

restrictions are generally found when the government has limited its ability to discharge an employee "for cause." *See, e.g., Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991); *McCreery v. Babylon Union Free School District,* 827 F.Supp. 136, 138 (E.D.N.Y.1993).

The parties do not dispute that Recchia–Hansemann was hired by BOCES as a "noncompetitive" class employee under New York's Civil Service Law. N.Y.Civ.Serv.Law § 75 (McKinney 1995). As such, she was not entitled to the protections of the Civil Service Law,[1] and Recchia–Hansemann does not assert that her protected property interest derives from this source.

Rather, Recchia–Hansemann asserts that her property interest is derived from the collective bargaining agreement entered into between BOCES and the Union. Although the collective bargaining agreement did not explicitly restrict BOCES' ability to discharge Recchia–Hansemann, the agreement did afford her some procedural protections. As an employee for more than two years, she was entitled to a hearing under Article 2 of the agreement before she could be discharged.[2] The agreement, however, does not state that Recchia–Hansemann could only be fired "for cause." In essence, Recchia–Hansemann contends that the procedural protections in the agreement create an implied property interest protected by the Fourteenth Amendment.

 The Supreme Court has recognized that a collective bargaining agreement may give rise to a protected property interest. *Brock v. Roadway Express, Inc.,* 481 U.S. 252, 261, 107 S.Ct. 1740, 1747, 95 L.Ed.2d 239 (1987); *see also Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991); *Danese v. Knox,* 827 F.Supp. 185, 190 (S.D.N.Y. 1993). Generally, collective bargaining agreements found to give rise to a property right explicitly provide that an employee can

---

**1.** Under Section 75 of the Civil Service Law, a noncompetitive class employee is not entitled to a hearing prior to discharge until she has completed five years of employment. *Id.*

**2.** Specifically, Article 2, paragraph 4, of the collective bargaining agreement provides that

"[n]on-competitive and labor class employees who have been employed by the BOCES for at least two consecutive years on a full-time basis and who are discharged shall be entitled to a hearing before the Executive Officer or designee. The determination of the Executive Officer shall be final and binding." (Compl., Ex. A at 2.)

only be fired "for cause." *See, e.g., United States v. International Brotherhood of Teamsters,* 3 F.3d 634, 635 (2d Cir.1993); *Danese,* 827 F.Supp. at 190.

There appears to be no reported cases in which a court has held that a property right was created by implication. To the contrary, the courts that have addressed the "implied property interest" theory put forward by the plaintiff have rejected it. Thus, in *Dunn v. County of Erie,* 1993 WL 499694, *2 (W.D.N.Y. Nov. 24, 1993), the court held that a collective bargaining agreement that established seniority rights and granted post-dismissal arbitration to employees did not, by implication, create a protected property interest. *Dunn,* 1993 WL 499694 at *2–*3. Similarly, in *Goetz,* the Second Circuit held that a collective bargaining agreement which guaranteed discharged employees at least a one-day notice of release, required the employer to state a reason for the discharge, and allowed the employee to grant an immediate audience with the Chief School Administrator did not create a property interest by implication. *Goetz,* 698 F.2d at 609. Finally, in *Robbins v. Malone Central School Dist.,* 182 A.D.2d 890, 581 N.Y.S.2d 493 (3rd Dep't), *appeal dismissed,* 80 N.Y.2d 825, 587 N.Y.S.2d 907, 600 N.E.2d 634 (1992), the court rejected the claim of a school bus driver that his collective bargaining agreement—which provided that he could not be fired without a hearing at which he could be represented—implicitly created a property interest protected by the Constitution. The court stated:

> the collective bargaining agreement gave him no right to continued employment because it does not alter respondent's right to terminate employees pursuant to a proper exercise of its discretion. Rather, it merely provides for what is clearly less than a full evidentiary hearing upon the request of an aggrieved employee.

*Id.,* 581 N.Y.S.2d at 494.

■ New York law also indicates that Recchia–Hansemann was an "at will" employee. A century ago the New York Court of Appeals enunciated its "employee-at-will doctrine." *Martin v. New York Life Ins. Co.,* 148 N.Y. 118 (1895). Under that doc-

trine, an employment contract which is silent as to the employee's status presumably entitles either the employer or the employee to terminate the employment relationship at any time and for any reason. *Id.; Sabetay v. Sterling Drug, Inc.,* 69 N.Y.2d 329, 333, 514 N.Y.S.2d 209, 506 N.E.2d 919 (1987).

Finally, a number of courts have noted that merely providing procedural protections does not, in itself, create substantive rights. For instance, the Second Circuit has repeatedly held in the context of asserted liberty interests that "the mere existence of reasonable procedures entitling a person to a hearing under the state law does not give rise to an independent substantive liberty interest protected by the Fourteenth Amendment." *Yale Auto Parts, Inc. v. Johnson,* 758 F.2d 54, 58 (2d Cir.1985); *see also Brandon v. District of Columbia Bd. of Parole,* 823 F.2d 644, 648 (D.C.Cir.1987). The Seventh Circuit has also held that "there is neither a 'liberty' nor a 'property' interest in procedures themselves." *Fleury v. Clayton,* 847 F.2d 1229, 1231 (7th Cir.1988); *see also Villanova v. Abrams,* 972 F.2d 792, 798 (7th Cir.1992) (noting the "persistent fallacy" in the belief "that procedural requirements create substantive entitlements.")

In short, Recchia–Hansemann was clearly employed at will by the defendant. As an "at will" employee, she had no cognizable property interest which could be infringed by BOCES when it terminated her, and no such interest was created by the collective bargaining agreement.

Recchia–Hansemann relies heavily on the statement of charges served on her by the Executive Officer. In addition to specifying the charges, the statement informed Recchia–Hansemann as follows: "If you are found guilty of any of these Charges, the penalty or punishment imposed upon you may consist of dismissal from service." (Compl., Ex. C). From that language, Recchia–Hansemann argues that she had a *contractual* right not to be discharged except for cause. (Plf.'s Mem. at 16.)

I disagree. Recchia–Hansemann offers no support for the proposition that the limited rights conferred upon her by New York Law

and the collective bargaining agreement can be enlarged—and turned into a protected property interest—by the language employed in a notice of charge.[3] Whether or not it chose to do so, BOCES had the legal right to terminate Recchia–Hansemann at will. Accordingly, she did not have the requisite property interest in her continued employment.

B. *The Alleged Liberty Interest*

 State employees have a constitutionally protected liberty interest which can be infringed by stigmatizing government conduct. *Wisconsin v. Constantineau,* 400 U.S. 433, 438, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971). However, "not every statement by an employer tending to reflect negatively on a terminated employee constitutes a constitutional offense." *Esposito v. Metro–North Commuter Railroad Co.,* 856 F.Supp. 799, 804 (S.D.N.Y.1994) (citing *Russell v. Hodges,* 470 F.2d 212, 217 (2d Cir.1972)). Rather, in order for an employee's liberty interest to be infringed in connection with a termination, the employer must have called into question the employee's good name, reputation, honor, or integrity. *Nauta v. City of Poughkeepsie, N.Y.,* 610 F.Supp. 980, 985 (S.D.N.Y.1985) (citing *Quinn v. Syracuse Model Neighborhood Corp,* 613 F.2d 438, 446 (2d Cir.1980)). The false and stigmatizing information must also have been made public by the government employer. *Quinn,* 613 F.2d at 446.

 A mere charge of incompetence or insubordination will thus not normally be sufficient to sustain a claim that an employee's liberty interests have been infringed. *See, e.g., Watson v. Sexton,* 755 F.Supp. 583, 592 (S.D.N.Y.1991); *Saraceno v. Utica,* 733 F.Supp. 538, 543 (N.D.N.Y.1990); *Nauta,* 610 F.Supp. at 985. However, the Second Circuit recently recognized a special rule affecting professionals. In *O'Neill v. City of Auburn,* 23 F.3d 685, 692 (2d Cir.1994) (citations omitted), the court stated that:

> governmental allegations of professional incompetence, made in connection with an employee's termination, will not support a

cause of action for a name-clearing hearing unless the allegations go "to the very heart of the [employee's] professional competence" and threaten to "damage his professional reputation," significantly impeding his ability to "practice his profession."

 Recchia–Hansemann's status as a registered nurse qualifies her as a professional, whose ability to secure future employment could be adversely affected by allegations of incompetence. However, she has not alleged that BOCES has published its charges of incompetence against her, and none of the pleadings or exhibits indicate that such a publication has occurred. Indeed, in her opposition to this motion, Recchia–Hansemann does not assert a liberty interest; she argues only that she had a protected property interest in her employment. (Plf.'s Mem. at 13.)

This absence of publication vitiates any claimed violation of plaintiff's liberty interest in its entirety. *Senape, M.D. v. Constantino,* 936 F.2d 687, 689 (2d Cir.1991) (publication is "an essential element" to deprivation of liberty). To the extent that the complaint may be based on the alleged deprivation of such an interest, it must therefore be dismissed.

C. *The Process Accorded The Plaintiff*

 Even if I were to find that Recchia–Hansemann had a cognizable property or liberty interest, I would conclude that BOCES provided Hansemann with more than adequate procedural due process before terminating her. Recchia–Hansemann was given notice of the charges against her and was allowed to retain counsel to represent her at a hearing conducted by an independent hearing officer. In that hearing, Recchia–Hansemann's lawyer was permitted to call and cross-examine witnesses, to make a record of the proceedings, and to review any documents introduced by BOCES. These procedural protections more than satisfy the due process requirements of the Constitution. *See, e.g., Cleveland Board of Ed. v.*

---

**3.** Despite the language in the notice of charge, BOCES made it clear in two subsequent letters to counsel that Recchia–Hansemann's rights were limited to those afforded her under the collective bargaining agreement. (Compl., Ex. F at 20, 29.)

*Loudermill,* 470 U.S. 532, 542–48, 105 S.Ct. 1487, 1493–96, 84 L.Ed.2d 494 (1985).

## Conclusion

For the reasons set forth above, the defendant's motion to dismiss the § 1983 claim is granted. Because I believe it would be inappropriate to retain jurisdiction over the remaining claim arising under state law, it is dismissed without prejudice.

So Ordered.