Sarrit SEGAL, Plaintiff,

v.

The CITY OF NEW YORK, The Department of Education of the City of New York, Joel Klein (both as Chancellor of NYC Public Schools and in his individual capacity), Theresa Europe (both as Director of The Office of Special Investigations and in his individual capacity), Thomas Highland (both as Deputy Director of The Office of Special Investigations and in his individual capacity), Ness Matos (both as an officer of The Office of Special Investigations and in his individual capacity), Joseph Ponzo (both as an Assistant Principal and in his individual capacity), Obdulia Karamanos (both as a Guidance Counselor and in her individual capacity), and John Doe, Jane Doe, Et. Al., Defendants.

No. 04 Civ.4564 (JSR).

United States District Court, S.D. New York.

May 12, 2005.

Edward H. Wolf, Law Offices of Edward H. Wolf, P.C., Bronx, NY, for Plaintiff.

Michele Ann Molfetta, NYC Law Department, Office of the Corporation Counsel, New York, NY, for Defendants.

### MEMORANDUM ORDER

RAKOFF, District Judge.

Plaintiff Sarrit Segal, a former probationary kindergarten teacher for the City of New York, alleges, in a three-count complaint, that the circumstances of her termination violated her constitutional right to due process and subjected her to governmental abuse. Defendants have moved for summary judgment in their favor on all three counts of the complaint. For the following reasons, the motion is granted.

The pertinent facts, either undisputed or, where disputed, taken most favorably to plaintiff, are as follows. In September

2002, Segal was appointed a probationary teacher for the New York City Department of Education ("DOE") and was assigned to teach kindergarten at P.S. 396 in the Bronx (part of District 10). *See* Deposition of Sarrit Segal, 10/27/04 ("Segal Dep."), attached as Ex. B to Declaration of Michele Molfetta ("Molfetta Decl."), at 35–36. On March 4 or 5, 2004, Assistant Principal Joseph Ponzo reported to the DOE's Office of Special Investigations that he had received information that Segal had failed to assist a student (called "Student A" to protect her privacy) when Student A was being attacked by other students. *See* Memorandum of Ness Matos to Thomas Hyland, May 6, 2004 ("Matos Memorandum"), attached as Ex. C to Molfetta Decl. In response, a DOE Confidential Investigator named Ness Matos conducted an investigation. Matos concluded that, at the time of the events at issue, Segal, unable to deal with a fracas among her students, had summoned the school guidance counselor, Obdulia Karamanos, to her classroom via telephone. When Karamanos arrived, she found Segal standing near a group of students who were kicking Student A as she lay lying on the floor. Karamanos stopped the students and helped Student A as Segal stood by. Other children reported that Segal had told them to hit Student A after Student A had hit other students. *See* Matos Memorandum at 1–2.

Segal strenuously disputed Matos' conclusions. She contended then, and contends now, that, before calling for help, she told the children to stop hitting Student A and tried to separate the children but with little success, since every time she removed one child another joined in the attack. *See* Matos Memorandum at 3; Affidavit of Sarrit Segal, February 4, 2005 ("Segal Aff."), attached as Ex. I to Declaration of Edward H. Wolf, dated February 4, 2005 ("Wolf Decl."), at ¶¶ 11–15. She denies that she told any child to hit Stu-

dent A and suggests that Matos reached this conclusion because he talked chiefly to students who participated in the attack (rather than bystanders) and blindly accepted their accounts. Segal Aff. at ¶¶ 12–15, 31–34.

Segal was not immediately removed from her classroom duties after the incident. *See* Deposition of Ness Matos, 10/28/04 ("Matos Dep."), attached as Ex. D to Wolf Decl.; Segal Aff. at ¶¶ 25–27. However, on May 6, 2004 Matos submitted a report to the Office of Special Investigations that concluded that Segal's version of the story was not credible and recommended that Segal be terminated and placed on the Department of Education's Ineligible/Inquiry List. *See* Matos Memorandum. Although this was simply a recommendation, Segal's response was to file the instant lawsuit on June 16, 2004.

By letter dated June 30, 2004, Joel DiBartolomeo, the Community Superintendent of District 10, informed plaintiff that he would decide, based on the recommendations of the Office of Special Investigations, whether to discontinue her services as a probationary employee and terminate her license as of July 12, 2004. *See* Letter from Joel DiBartolomeo, June 30, 2004, attached as Ex. D to Molfetta Decl. Although plaintiff has failed to submit direct evidence of DiBartolomeo's determination, he evidently decided to terminate her, because thereafter her union, the United Federation of Teachers, filed an appeal on her behalf. *See* Segal Aff. at ¶¶ 37–38. By Notice dated October 7, 2004, Segal was notified by the Department of Education's Office of Appeals and Reviews that a review of DiBartolomeo's decision was scheduled for hearing on December 15, 2004. *See* Notice to Appellant, October 7, 2004, attached as Ex. F to Molfetta Decl. However, on advice of counsel, Segal wrote a letter to the Office of Appeals and Re-

views stating that she had not given anyone permission to file the appeal and was not seeking a hearing. *See* Letter from Sarrit Segal Haik, October 25, 2004, attached as Ex. G to Molfetta Decl. Accordingly, no hearing was held. *See* Segal Aff. ¶ 40.

Indeed, other than pursuing this federal lawsuit, Segal took no steps whatsoever to challenge her termination, either within the DOE or in state court. Instead, Segal sought alternative employment to begin in the fall of 2004. She was initially offered a position at a half-day kindergarten at the Riverdale Young Men's Hebrew Association, but that offer was withdrawn after she disclosed the reasons for her termination from the DOE. *See* Segal Aff. at ¶ 41. Additionally, the Matos Memorandum was somehow "leaked" to the New York Post, which ran a story in December, 2004 unfavorable to Segal. *See* Segal Aff. ¶¶ 51–56; Carl Campanile, Teach a Riot Rouser: Kindergarten Brawl, New York Post, 12/20/04, attached as Ex. G to Wolf Aff. Segal did eventually find secure employment as a Head Teacher at a private daycare center, where, she states, she makes $10,000 less than she did in the school system, works longer hours, and is not using her teaching skills. *See* Segal Aff. at ¶¶ 42–48.

■ The Due Process Clause of the Fourteenth Amendment prohibits a state actor from depriving a citizen of her life, liberty, or property without due process of law. Loss of reputation can constitute deprivation of a liberty interest when, for example, it occurs in the course of dismissal from government employment. *See Patterson v. City of Utica,* 370 F.3d 322, 329–30 (2d Cir.2004). This is commonly referred to as a "stigma-plus" claim. *Id.* All three of Segal's causes of action here

are predicated on the existence of such a claim.[1] Thus, to avoid summary judgment, Segal must, at a minimum, adduce competent evidence from which a reasonable fact-finder could find, first, that the DOE, in connection with terminating Segal, made false, publicly-available statements that impugned plaintiff's professional reputation, and, second, failed to give her adequate due process to clear her name. *See generally Patterson,* 370 F.3d at 329–30.

■ Assuming, *arguendo,* that Segal has met the first requirement, she has wholly failed to meet the second. For the DOE offered her an opportunity to clear her name, and even avoid termination, by pursuing an administrative appeal, an opportunity her union preserved for her by filing the appeal and requesting a hearing. But Segal, egged on by litigious counsel who had already filed this lawsuit prematurely, voluntarily chose to forego this opportunity.

The hearing and review procedure she voluntarily chose to abandon more than meets the requirements of due process. As set forth in the Regulation of the Chancellor C–31, 10/16/02 ("C–31"), attached as Ex. E to Molfetta Decl., after the appeal is filed the Office of Appeals and Reviews notifies the employee, at least three weeks before the hearing date, of the time, date, and place of the hearing on the appeal. C–31 § 3.2.1. The employee also receives written notice before the hearing that he or she is entitled at the hearing to be represented by an advocate selected by the employee's union, to present all relevant evidence, to call witnesses on his or her behalf, to cross-examine witnesses, and to make an oral presentation. C–31 § 3.2.3; Bylaws of the Board of Education City School District of the City of New York,

---

1. Segal concedes that she has no due process claim based on any property interest, since she was a probationary employee with no constitutionally protected property interest in her employment.

June 20, 2001, § 5.3.4. The hearing is scheduled for within a year of the request for a hearing, *id.,* and is tape recorded. C–31 § 3.2.4. At the hearing, the DOE must present evidence in support of its decision, which the employee can challenge as indicated above. C–31 § 3.2.3. The final decision regarding termination is made by the Chancellor after reviewing the report that issues from the hearing, and the employee and all other concerned parties are notified in writing as to the ultimate determination. C–31 §§ 3.3, 4, 5.

It is patent that this procedure more than meets the requirements of due process. *See, e.g., Patterson,* 370 F.3d at 336–37; *Komlosi v. New York State Office of Mental Retardation and Developmental Disabilities,* 64 F.3d 810, 817–18 (2d Cir. 1995). Thus, Segal was not deprived of due process; she simply chose not to avail herself of it, and thereby forfeited her right to complain.[2]

Furthermore, even if, contrary to fact, Segal had not been provided with adequate due process in the form of the C–31 hearing—or even if, contrary to law, her failure to avail herself of that procedure did not constitute a waiver of any claim of denial of due process—Segal also had available an entirely adequate further remedy in the form of a New York State Article 78 proceeding, N.Y. C.P.L.R. § 7801 et seq. *See Hellenic American Neighborhood Action Committee ("HANAC") v. City of New York,* 101 F.3d 877, 880–81 (2d Cir.1996) (collecting cases). Her knowing failure to avail herself of this further remedy provides, therefore, an independent basis for dismissing her claims. *Id.; see also Zinermon v. Burch,* 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990).[3]

"[A] procedural due process violation cannot have occurred when the governmental actor provides apparently adequate procedural remedies and the plaintiff has not availed himself of those remedies." *Ciambriello v. County of Nassau,* 292 F.3d 307, 323 (2d Cir.2002) (*quoting New York State National Organization for Women v. Pataki,* 261 F.3d 156, 169 (2d Cir.2001)). Accordingly, because Segal has failed to establish that she suffered a due process violation, and because that failure is fatal to all three of her claims, defendants' motion for summary judgment in their favor is granted in its entirety and the Com-

**2.** *Goetz v. Windsor Central School District,* 698 F.2d 606 (2d Cir.1983) is not to the contrary. There, the Court of Appeals reversed the decision of the district court granting summary judgment before any discovery had occurred. In so doing, the Court of Appeals noted that, in the absence of evidence, the nature of the procedure that plaintiff had failed to avail himself of was unclear, and added that:

> If it is found that Goetz was deprived of a liberty interest, he may well be entitled to more due process than the procedure under the collective bargaining agreement afforded him. Failure to take advantage of that procedure may not, therefore, be interpreted as a waiver of the full due process to which he would be entitled.

*Id.* at 610. Here, by contrast, the undisputed evidence indicates that the DOE's hearing procedures comport with due process; indeed, after full discovery, plaintiff has not proffered a single item of admissible evidence putting at issue the constitutional adequacy of the DOE's hearing procedures. Instead, plaintiff's counsel simply chose to rely on his personal opinion that the DOE appeal process was "slow and unfair." *See* Memorandum in Opposition to Defendants' Motion for Summary Judgment at 8 n. 4.

**3.** Plaintiff seeks to avoid this conclusion by noting that when the alleged violation stems from "established state procedures, rather than random acts, the availability of postdeprivation procedures will not, ipso facto, satisfy due process." *HANAC,* 101 F.3d at 880. But here, the only "established state procedure" on which Segal purports to rely is the City's alleged failure to train its investigators, in support of which she offers no admissible evidence that is remotely material.

plaint is hereby dismissed with prejudice. Clerk to enter judgment.

SO ORDERED.