**Lawrence CHOLEWIN, Plaintiff,**

v.

**CITY OF EVANSTON, ILLINOIS, Defendant.**

No. 89 C 3125.

United States District Court, N.D. Illinois, E.D.

July 17, 1989.

Kenneth N. Flaxman and Elizabeth Dale, Chicago, Ill., for plaintiff.

Jack M. Siegel, Chicago, Ill., for defendant.

## ORDER

BUA, District Judge.

On April 17, 1989, plaintiff filed the instant action claiming that defendant denied him the property right embodied in Chapter 70, Paragraph 91 of Illinois Revised Statutes without affording him due process of law as required by the Fourteenth Amendment to the United States Constitution. The parties agreed to a bench trial, which was held on May 4 and 5. Having heard and considered all of the evidence presented at trial, the court hereby makes the following findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).

## FINDINGS OF FACT

1. Plaintiff Lawrence Cholewin has been employed as a police officer by the defendant City of Evanston ("Evanston"), a municipality, since 1977. (Tr. 32.)

2. At about 10:00 a.m. on Sunday, September 4, 1988, while Cholewin was on duty as an Evanston police officer, he responded to a police call complaining of a possible burglary at the premises of 2100 Greenleaf in Evanston. (Tr. 32, 33.) The complaining call was placed by the owner, Jay Collier, who runs a furniture delivery service and self-storage company at the premises. (Tr. 13–14.)

3. When Officer Cholewin arrived at the scene, two other Evanston policemen, Officer Chuck Perry and Officer Siripong Sricharmorn, a/k/a Officer Lek (Tr. 202.), were already there. (Tr. 16, 32, 150, 197.)

4. Officer Cholewin learned that Collier and Officer Sricharmorn had observed a man running from one of the boats parked in Collier's fenced-in yard. (Tr. 13–14, 16, 34, 196.) The man ran into a large patch of weeds located on the southwest portion of Collier's property. (Tr. 16, 34, 196.) The weeds were thick and were approximately six feet high, making it difficult to see the intruder. (Tr. 16, 155, 196–197.) Officers Perry and Sricharmorn had attempted to follow the intruder but, after venturing a short distance into the weeds, Officer Sricharmorn was bothered by allergies and Officer Perry determined that the weeds were too dense to get through. (Tr. 155, 197.)

5. When Officer Cholewin arrived, the three policemen and Collier guarded the weeded area and discussed their next step in attempting to apprehend the intruder. (Tr. 16, 34, 156.) Collier, whose van was parked five to ten yards away from where the group was standing, offered to drive his van into the weeded area. (Tr. 16–17, 35, 156.)

6. Collier and Officer Cholewin then walked over to Collier's van, while Officers Perry and Sricharmorn remained by the weeds. (Tr. 18, 24, 35, 158.) The van was attached to a trailer which was carrying Collier's twenty-four foot boat. (Tr. 15, 35.) Collier explained that he wanted to unhitch the trailer before driving the van through the weeds. (Tr. 17, 35.)

7. Collier then backed up the van and the boat, trying to find a level spot to unhitch the trailer. (Tr. 18–19, 35–36.) Officer Cholewin was behind the boat, directing Collier. (Tr. 18, 36.) After finding a level spot, Collier exited the van to unhitch the trailer. (Tr. 19, 36.) This required pulling up on the front A-frame of the trailer, allowing the spring-loaded front wheel of the trailer to kick down, and then cranking up the leg supporting the front wheel until the front of the trailer was raised above the hitch on the van. (Tr. 19, 21.)

8. Officer Cholewin claims that he assisted Collier in unhitching the trailer by pulling up on the front of the trailer along with Collier to allow the front wheel of the

trailer to kick down into place. (Tr. 37.) Collier, however, did not see Officer Cholewin ever touching the boat, the trailer, or the van. (Tr. 22, 26.) To the best of Collier's knowledge, he unhitched the trailer by himself. (Tr. 26–27.) Officers Perry and Sricharmorn, who were guarding the weeded area while the trailer was unhitched, did not observe the entire unhitching process and, therefore, were unable to definitively state whether Officer Cholewin had helped pull up the trailer to unhitch the boat. (Tr. 151, 159–162, 198.)

9. After the trailer was unhitched, Sergeant Charles Heuer of the Evanston Police Department arrived on the scene. (Tr. 111, 113, 163.) He was the patrol supervisor on duty that morning. (Tr. 110–111.) Sergeant Heuer walked through a path in the weeds and determined that the intruder had escaped through a hole in the fence. (Tr. 131, 164.)

10. The next day, Monday, September 5, 1988, Officer Cholewin was off from work due to the Labor Day holiday. Officer Cholewin also did not work the following Tuesday, the 6th, which was his regular day off. (Tr. 39.) On either the evening of the 5th or the morning of the 6th, Officer Cholewin told Sergeant Everett Erlandson, the supervisor on his regular shift, that he had sustained a neck injury while helping to unhitch Collier's trailer in the course of his duty on September 4. (Tr. 39.) On September 6, Officer Cholewin also reported his injury to Sergeant Frank Pascher, who worked in the Personnel Bureau of the Police Department. (Tr. 63–64.)

11. Officer Cholewin's injury has been diagnosed as a herniated cervical disk at C–5 level, which is located just above the collar. (Tr. 41, 75.) The herniated disk is impinging on Officer Cholewin's spinal cord and causing damage to the nerves in his arms. (Tr. 41.) No doctor who has examined Officer Cholewin has reported that he is able to return to his work as a police officer. (Tr. 44.)

12. Officer Cholewin began receiving injury-on-duty pay on September 7, 1988. (Def. Ex. 11; Tr. 188.)

13. Also on September 7, 1988, the Internal Affairs Bureau (IAB) of the Evanston Police Department began investigating Officer Cholewin's claim that he had been injured while on duty. (Tr. 167.) Police Lieutenant John F. Popadowski was assigned the investigation. (Tr. 167.)

14. In the course of the IAB investigation, Lt. Popadowski conducted interviews of Collier, Officer Sricharmorn, Sgt. Heuer, and Sgt. Pascher. (Tr. 168.) Lt. Popadowski also interviewed Dr. Vogel, who had examined Officer Cholewin. (Tr. 180.) Sgt. Thomas Gallivan of the IAB aided Lt. Popadowski in the investigation by interviewing Officer Perry and Sgt. Erlandson. (Pl. Ex. 6; Tr. 168.) Each of the interviews were tape recorded and the recordings were transcribed. (Tr. 168.) Lt. Popadowski also collected memos and other documents which pertained to the incident. (Tr. 168.)

15. On October 4, 1988, Lt. Popadowski gave written notice of the IAB investigation to Officer Cholewin. (Def. Ex. 1; Tr. 60.) The notice informed Officer Cholewin that the department was investigating his claim that he was injured on duty September 4, 1988, while disconnecting Collier's trailer. The notice further informed Cholewin that "[Collier] stated that no officer ever touched the boat or trailer while it was being detached from the van." (Def. Ex. 1; Tr. 60–61.)

16. In October 1988, after receiving the October notice from Lt. Popadowski, Officer Cholewin retained Noel Wroblewski, an attorney from the police officers' union, to represent him during the investigation. (Tr. 70–71.)

17. Officer Cholewin received a second notice of the IAB investigation from Sgt. Gallivan on December 12, 1988. (Def. Ex. 2; Tr. 66–67.) In that notice, Officer Cholewin was again told that Collier had contradicted Officer Cholewin's story regarding the events of September 4. (Def. Ex. 2.) The second notice also advised Officer Cholewin to report to Lt. Popadowski on December 22, 1988, for an interview concerning his alleged on-duty injury. (Def. Ex. 2.) The December 12 notice further

apprised Officer Cholewin that he had the right to an attorney during the course of the interrogation. (Def. Ex. 2.)

18. On December 22, 1988, Lt. Popadowski interviewed Officer Cholewin regarding the events of September 4 and Officer Cholewin's alleged on-duty injury. (Def. Ex. 10.) Officer Cholewin was represented by Wroblewski at the interview. (Tr. 54, 170.)

19. Lt. Popadowski began the interview by explaining to Officer Cholewin that the department was investigating whether Officer Cholewin's injury had occurred during the course of his duty. (Def. Ex. 10; Tr. 68.) Officer Cholewin then told his side of the story regarding the events of September 4 in Collier's yard. (Tr. 54.) Officer Cholewin also discussed the nature of his injury and his reporting of the injury to the police department. (Def. Ex. 10.) At the end of the interview, Lt. Popadowski asked Cholewin if there was anything further he wanted to say. After consulting with Wroblewski, Officer Cholewin stated that he had nothing to add. (Tr. 54–55, 171.)

20. At no time during his interview with Lt. Popadowski or at any other point in the investigation did Officer Cholewin or Wroblewski request that the department turn over the statements and documents which the department had gathered during the investigation. (Tr. 175, 177.)

21. After interviewing Officer Cholewin, Lt. Popadowski assembled all of the information concerning the IAB's investigation of Officer Cholewin and turned the information over to his supervisors. (Tr. 182.)

22. On March 24, 1989, the City of Evanston stopped paying Officer Cholewin the injured-on-duty benefits that he had been receiving since September 7, 1988. (Pl. Ex. 2; Def. Ex. 11.) This decision was made collectively by Deborah Sleet, a workers' compensation analyst for Evanston; Christopher Johnson, the Director of Safety and Risk Management for Evanston; Joel Asprooth, the City Manager of Evanston; John Rittenhouse of Martin Boyer Company, an adjuster; and Frank Wiedner, Evanston's workers' compensation attor-

ney. (Tr. 9.) Relying on the IAB investigation conducted by Lt. Popadowski, these individuals concluded, on behalf of Evanston, that Officer Cholewin had not suffered an on-duty injury. (Tr. 182; Pl. Ex. 1.)

23. Although Officer Cholewin has been denied injury-on-duty pay, he has not been the subject of any disciplinary action. (Tr. 109.) In light of the fact that he has been diagnosed as physically incapable of performing his duties as a police officer, he has been given an unpaid leave of absence. (Tr. 91.) This leave of absence was given in accordance with the Evanston Police Department's procedures for off-duty injuries. (Tr. 90–91; Def. Ex. 4, pp. 78–81.)

■ 24. To the extent that any of the foregoing findings of fact are deemed to be conclusions of law, they are hereby adopted as conclusions of law.

## CONCLUSIONS OF LAW

1. Paragraph 91 of Chapter 70 of Illinois Revised Statutes provides:

> Whenever any law enforcement officer ... who is employed on a full time basis by the State of Illinois, [or] any unit of local government, ... suffers any injury in the line of duty which caused him to be unable to perform his duties, he shall continue to be paid on the same basis he was paid before the injury ... during the time he is unable to perform his duties due to the result of the injury but not longer than one year in relation to the same injury.

Pursuant to this statute, any municipal police officer who suffers an injury in the line of duty acquires a protectible property right in receiving his full pay for as long as the injury prevents him from performing his duties, but no longer than one year. Under the Fourteenth Amendment to the United States Constitution, a police officer cannot be denied that property interest without due process of law.

2. The court has grave doubts about the credibility of Officer Cholewin's testimony that he was injured on the job. Therefore, the court has serious reservations concerning whether Officer Cholewin ever ac-

quired any rights to the property interest embodied in Ill.Rev.Stat. ch. 70, ¶ 91.

3. Nevertheless, assuming that Officer Cholewin was injured on duty while unhitching Collier's boat on September 4, 1988, and assuming that Officer Cholewin thereby acquired protectible rights in the property interest embodied in ¶ 91, the court finds that Evanston did not deny Officer Cholewin that property interest without due process of law.

■ 4. The essential requirements of due process are notice and an opportunity to respond. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985). Before action is taken against a public employee which would deny the employee a property right, the employee must be adequately notified of the proposed action against him and must be provided a sufficient opportunity to "present his side of the case." *Loudermill*, 470 U.S. at 542–543, 105 S.Ct. at 1493–94.

■ 5. In the instant case, Evanston provided Officer Cholewin with adequate notice of the proposed action against him. Evanston gave two separate written notices to Officer Cholewin. Officer Cholewin received these notices prior to his interview with Lt. Popadowski and well before any action was taken against him. The notices informed Officer Cholewin that there was some evidence contradicting his injury-on-duty claim and that the department was investigating whether he was in fact injured on duty. In the second notice, Officer Cholewin was advised ten days in advance that he should appear for an interview at which he would be afforded the opportunity to present his side of the case. Thus, Evanston fully apprised Officer Cholewin of the investigation of his injury-on-duty claim.

6. Evanston also provided Officer Cholewin with sufficient opportunity to respond to the charge against him, *i.e.*, the charge that he was not injured on duty. First, due to the amount of time between the notices given to Officer Cholewin and his interview with Lt. Popadowski, Officer Cholewin had sufficient opportunity to respond, either in writing or orally, to the charge that he was not injured by lifting Collier's trailer. Second, Evanston provided Officer Cholewin with a forum to present his side of the story. During his interview with Lt. Popadowski, Officer Cholewin clearly had ample opportunity to substantiate his injured-on-duty claim.

■ 7. Officer Cholewin apparently takes the position that he had a right to a full evidentiary hearing. However, the predeprivation "hearing" required to satisfy due process must merely provide an initial check against mistaken decisions and determine if there are reasonable grounds to support the proposed action. *Loudermill*, 470 U.S. at 546–47, 105 S.Ct. at 1495–96. Thus, the predeprivation "hearing" need not be elaborate. 470 U.S. at 546, 105 S.Ct. at 1495. As long as the employee is given adequate notice and a sufficient opportunity to respond, something less than a full evidentiary hearing is sufficient prior to adverse administrative action. *Mathews v. Eldridge*, 424 U.S. 319, 343, 96 S.Ct. 893, 907, 47 L.Ed.2d 18 (1976); *Toney–El v. Franzen*, 777 F.2d 1224, 1229 (7th Cir. 1985), *cert. denied*, 476 U.S. 1178, 106 S.Ct. 2909, 90 L.Ed.2d 994 (1986). Therefore, the court rejects Officer Cholewin's claim that he had a right to a full evidentiary hearing.

8. Similarly, the court rejects Officer Cholewin's claim that he had the right to examine all of the documents gathered by Lt. Popadowski and to confront all of the witnesses interviewed during the investigation. Significantly, throughout the entire investigation, neither Officer Cholewin nor his counsel, Noel Wroblewski, ever requested to review the relevant documents or interrogate any witnesses. Moreover, Officer Cholewin cannot maintain that he was inadequately apprised of the nature of the evidence against him. In any event, the court finds that due process was not abrogated by the fact that Officer Cholewin was not provided with all of the information gathered during the investigation. *Loudermill*, 470 U.S. at 542–47, 105 S.Ct. at 1493–96.

9. Finally, the court rejects Officer Cholewin's claim that his due process rights were violated because Evanston failed to follow its own procedures, as listed in the Evanston Employee Personnel Manual, in taking action against him. The procedures on which Officer Cholewin relies are *disciplinary* procedures. Officer Cholewin has not been disciplined by Evanston; the city has simply denied his claim for injury-on-duty benefits. He has been given an unpaid leave of absence simply because he is unable to work as the result of an injury which Evanston has determined he sustained off duty. Therefore, the disciplinary procedures outlined in the personnel manual are inapplicable.

■ 10. Since the statute granting the property interest at issue in this case does not provide procedures by which an on-duty-injury claim must be evaluated, Evanston was free to evaluate Officer Cholewin's injury-on-duty claim through any procedure which afforded him adequate notice and opportunity to be heard at a meaningful time and in a meaningful manner. *Brock v. Roadway Express, Inc.*, 481 U.S. 252, 107 S.Ct. 1740, 1747, 95 L.Ed.2d 239 (1987); *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). The procedure followed by Evanston met these requirements. Therefore, Officer Cholewin was afforded the due process guaranteed by the Fourteenth Amendment.

11. To the extent that any of the foregoing conclusions of law are deemed to be findings of fact, they are hereby adopted as findings of fact.

### CONCLUSION

For the foregoing reasons, judgment is entered in favor of defendant Evanston.

IT IS SO ORDERED.