Thomas BURKA, Eugene Avent, Frank Doe, Tracey Devlin, Fitzgerald Cumberbatch, and Felix Arce, on behalf of themselves and all others similarly situated, Plaintiffs,

James Salazar, Plaintiff–Intervenor,

v.

NEW YORK CITY TRANSIT AUTHORITY, David L. Gunn, individually and in his official capacity as President of the New York City Transit Authority, and his successors in office; Robert F. Kiley, individually and in his official ca-

pacity as Chairman of the New York City Transit Authority, and his successors in office; William I. Buchanan, III, individually and in his official capacity as Assistant Manager of Labor Relations for the New York City Transit Authority, and his successors in office; Richard Mandel, individually and in his official capacity as the Acting Medical Director of the New York City Transit Authority, and his successors in office, Defendants.

John FA, Plaintiff,

v.

NEW YORK CITY TRANSIT AUTHORITY and David L. Gunn, individually and as President of the New York City Transit Authority, Defendants.

Nos. 85 Civ. 5751 (RPP), 86 Civ. 6536 (RPP).

United States District Court, S.D. New York.

Aug. 31, 1990.

The Legal Action Center of the City of New York, Inc., Margaret K. Brooks, Ellen M. Weber, Edward J. Davis, New York City, for Burka plaintiff class.

Gladstein, Reif & Meginniss, James Reif, New York City, for plaintiff-intervenor James Salazar.

Brooklyn Legal Services Corp. B, Jane Greengold Stevens, Brooklyn, N.Y., for plaintiff John Fa.

New York City Transit Authority, Office of Albert C. Cosenza, Gen. Counsel, Eugene Freidus, Deborah E. Collins, Brooklyn, N.Y., for defendants.

### OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

Defendants move, pursuant to Federal Rule of Civil Procedure 52(b), for an amendment to the findings of fact and conclusions of law contained in the Opinion and Order of June 5, 1990 ("the Opinion") in the above captioned cases. 739 F.Supp. 814. This motion pertains to the portion of the Opinion which found that defendants had violated the due process rights of permanent employees of the Transit Authority (TA) who were disciplined because their urine sample, taken between January 1, 1984 and October 1, 1986, tested positive for marijuana use. Familiarity with the Opinion is presumed throughout this decision.

### Background

New York Civil Service Law Section 75 provides for a hearing in which permanent employees of the TA can contest charges of misconduct. Pursuant to New York Civil Service Law Section 76, various unions during the 1980's agreed, by collective bargaining, to either the substitution of an arbitration process for or a choice of an arbitration process instead of the disciplinary hearings provided for by Section 75.[1] The agreements to substitution of arbitration processes for Section 75 hearings stated:

> The disciplinary procedure set forth in this Section shall be in lieu of any other disciplinary procedure that may have previously applied to the language covered by this Agreement including but not limited to the procedure specified in Sections 75 and 76 of the Civil Service Law and shall apply to all persons who but for this procedure would be subject to Sections 75 and 76 of the Civil Service Law. This procedure shall not apply to probationary, part-time or temporary employees.

Ex. 2–8 to Mayo Aff. The agreement, which defendants describe as providing

---

1. By an agreement effective June 30, 1980, the Transit Workers Union agreed that its members, who wished to contest misconduct charges, could choose either a Section 75 hearing or an arbitration process. By an agreement effective October 1, 1985, the Transit Workers Union removed the Section 75 option and arbitration became the exclusive means for its members to challenge misconduct charges. The Amalga- mated Transit Union Local 1056, the Amalgamated Transit Union Local 726, the Queens Supervisors Organization, the Doctors Council, and the Special Inspectors Benevolent Association, agreed to replace Section 75 hearings with arbitration processes, respectively, by agreements effective December 26, 1985; April 1, 1985; June 1, 1985; April 1, 1985; and April 1, 1982.

that Transit Workers Union (TWU) members, between 1980 and 1985, "would have a choice in disciplinary proceedings between arbitration or a Civil Service Law Section 75 hearing," Mayo Aff. at 1, ¶ 3, stated:

It is the purpose of this agreement to establish in the Transit Authority a substitute disciplinary procedure to that presently based on Sections 75 and 76 of the Civil Service Law. This new procedure, which shall apply to employees who would otherwise be entitled to a hearing under Section 75, shall be effective for any charges arising from actions of the employee subsequent to the date this agreement is signed. It is understood that the right to discharge or discipline employees for cause and to maintain discipline and efficiency of employees is the responsibility of the Transit Authority. It is further understood that this procedure will be applicable to all disciplinary actions initiated by management and supervision against employees covered by this contract.

\* \* \* \* \* \*

After the decision of the Manager of Labor Relations is received by the Union and the employee, if the Union decides not to request Impartial Arbitration, or if the employee does not sign a waiver of his rights under Sections 75 and 76 of the Civil Service Law, the employee may elect to have a hearing under Section 75, except where the penalty is a Caution.

Ex. 1 to Mayo Aff.

Defendants argue that the Opinion should be amended to reflect that those unionized permanent employees whose marijuana use charges were resolved by an arbitration process rather than by a Section 75 hearing are not covered by the due process findings. The theory of defendants' argument is that those unionized plaintiffs waived their due process rights when their unions entered into collective bargaining agreements with the TA.

### Discussion

■ Due process rights can be waived when there is clear and compelling evidence of a voluntary, knowing and intelligent waiver. *See D.H. Overmyer Co. v. Frick Co.*, 405 U.S. 174, 92 S.Ct. 775, 31 L.Ed.2d 124 (1972); *Erie Telecommunications, Inc. v. City of Erie, Pa.*, 853 F.2d 1084, 1094–95 (3d Cir.1988) (quoting *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 145, 87 S.Ct. 1975, 1986, 18 L.Ed.2d 1094 (1967)). The Supreme Court instructs lower courts to " 'indulge in every reasonable presumption against waiver' of fundamental constitutional rights and .. '[not to] presume acquiescence in the loss' of such rights." *Erie Telecommunications, Inc.*, 853 F.2d at 1095 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)).

■ Permanent employees had due process rights at stake in the determination that they had used marijuana and it is those rights that defendants claim were waived. Due process requires that adequate procedures accompany a decision to discipline permanent employees for misconduct because there is a constitutional liberty interest in reputation at stake in a challenge to a misconduct charge and because Section 75 creates a constitutional property interest—i.e., the right to continued employment absent sufficient reason for discharge. Section 75 creates a property interest entitled to constitutional protection by virtue of the provision in Section 75(1) that permanent employees:

shall not be removed or otherwise subjected to any disciplinary penalty provided in this section except for incompetency or misconduct shown after a hearing upon stated charges pursuant to this section.

N.Y.Civ.Serv.Law § 75(1).

Under *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 540–42, 105 S.Ct. 1487, 1492–93, 84 L.Ed.2d 494 (1985), the procedures which the Constitution requires before deprivation of the property interest created by the statute are not limited to the confines of the hearing provided for by a statute. In its Opinion and Order of June 5, 1990, the Court found the hearing provided for by Section 75(2) to be inadequate to protect the permanent employees' property and liberty interests, as required by

*Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), because the confines of the hearing did not offer a meaningful opportunity to challenge a positive test result. The basis for the Court's conclusion was not the lack of any specific safeguards at the hearing, but the failure of the TA to provide, *prior* to the Section 75 hearing, either timely notice of results to facilitate an opportunity for independent testing or a formal re-testing program. Only if such pre-hearing safeguards were available could there be a meaningful challenge to the test results at the hearing.

The unions' agreements waived the right of their members to participate in Section 75 hearings, or, in the case of TWU members between 1980 and 1985, the permanent employees who chose the impartial arbitration process over the Section 75 hearing waived their rights to a Section 75 hearing. Those were waivers of a statutory right to a certain type of hearing. However, there is no evidence or language in the collective bargaining agreements to support the proposition that the waivers were meant to encompass any constitutionally required procedures preceding such a hearing.

Furthermore, none of the caselaw relied upon by defendants stands for the proposition that a collective bargaining agreement's provision for an arbitration process, rather than a statutory disciplinary hearing, constitutes a waiver of the right to due process protection of the property and liberty interests of union members, which are at stake in the arbitration process. In *Narumanchi v. Board of Trustees of Connecticut State University,* 850 F.2d 70, 72 (2d Cir.1988) the arbitration processes satisfied due process challenges not because the union members had waived their due process rights by entering into the collective bargaining agreement, but because the arbitration procedures satisfied the test set forth in *Mathews v. Eldridge, supra,* for determining whether there were adequate procedural safeguards to protect the due process interests at stake. The reasoning of *Jackson v. Temple University of the Commonwealth of System of Higher Education,* 721 F.2d 931 (3d Cir.1983) (arbitration process satisfies employer's obligation

to provide due process to employee), is consistent with *Narumanchi.*

In *Parrett v. City of Connersville, Indiana,* 737 F.2d 690, 698 (7th Cir.1984), cert. denied, 469 U.S. 1145, 105 S.Ct. 828, 83 L.Ed.2d 820 (1985), the Seventh Circuit held that at trial "the jury certainly was entitled to reject the argument that the grievance machinery [provided for in a collective bargaining agreement] satisfied the defendant's obligation to provide Parrett [the government employee] due process of law." *See also Goetz v. Windsor Central School District,* 698 F.2d 606, 610 (2d Cir. 1983) (public employee "may well be entitled to more due process than the procedure under the collective bargaining agreement afforded him").

Accordingly, the unionized permanent employees waived only statutory rights to a Section 75 hearing and did not waive their constitutional rights to be deprived of property and liberty interests only after being accorded procedures which satisfy the requirements of *Mathews v. Eldridge.*

■ The only remaining issue is whether the Court's finding in the Opinion that the opportunity to challenge a test result in a Section 75 hearing was inadequate under *Mathews v. Eldridge* also applies to the opportunity to challenge a test result in an arbitration process. A review of the arbitration processes outlined in the respective collective bargaining agreements reveals that these processes could be no more meaningful a forum than a Section 75 hearing for an employee attempting to challenge a positive test result. Between January 1, 1984 and October 1, 1986, the safeguards of either a formal re-testing program or timely notice of results to facilitate an opportunity for independent testing were not made available to any permanent employees. Accordingly, the Opinion's conclusion that the due process rights of permanent employees were violated includes those permanent employees who had waived their statutory rights to Section 75 hearings in favor of arbitration processes.

### Conclusion

Defendants' motion to exclude unionized permanent employees, who challenged their positive test results for marijuana use in arbitration processes rather than Section 75 hearings, from the Opinion's findings of due process violations is denied.

IT IS SO ORDERED.