Gaspar DANESE, individually and as President of the Port Authority Police Benevolent Association, Inc.; The Port Authority Police Benevolent Association, Inc.; and Melanie Walker, Plaintiffs,

v.

Charles KNOX, as Superintendent of Police of the Port Authority of New York and New Jersey Police Department; The Port Authority of New York and New Jersey Police Department; Dr. Pilar Carbajal, as Medical Director of the Port Authority of New York and New Jersey; and The Port Authority of New York and New Jersey, Defendants.

No. 92 Civ. 5472 (LBS).

United States District Court,
S.D. New York.

July 6, 1993.

Axelrod, Cornachio & Famighetti, Mineola, NY (Michael C. Axelrod, of counsel), for plaintiffs.

Milton H. Pachter, New York City, for defendants.

## OPINION

SAND, District Judge.

Plaintiff Melanie Walker, a former police officer employed by the defendant Port Authority of New York and New Jersey Police Department ("Port Authority"), brings this action pursuant to 42 U.S.C. § 1983, on behalf of a class of similarly situated police officer employees of the Port Authority (the "proposed plaintiff class"). As of this date, no class has been certified by the Court. The Port Authority Benevolent Association ("Benevolent Association"), the certified bargaining agent for the police officer employees of the Port Authority, and Gaspar Danese, the president of the Benevolent Association, are co-plaintiffs.

Walker alleges a denial of her due process, equal protection, and first amendment rights in connection with the Port Authority's failure to provide her with "line of duty" sick leave which plaintiff claims was guaranteed to her under a collective bargaining agreement. Presumably, she asserts these claims both in her individual capacity and as the class representative. The complaint also names as defendants Charles Knox, Superintendent of the Port Authority Police Department, Dr. Pilar Carbajal, Medical Director of the Port Authority, and the Port Authority of New York and New Jersey.

The defendants have moved to dismiss the complaint under Fed.R.Civ.P. 12(b)(6) and for sanctions under Fed.R.Civ.P. 11. The principal issues before the Court are whether the "right" of the members of the proposed plaintiff class to certain disability benefits under a collective bargaining agreement is "property" under the fourteenth amendment, and, if so, whether the deprivation procedures in the collective bargaining agreement provide the members of the proposed plaintiff class with all the process that is "due" them under the fourteenth amendment. For the reasons that follow, the defendants' motion to dismiss is granted. Defendants' motion for sanctions is denied.

### BACKGROUND

Plaintiff Melanie Walker was hired as a police officer by the Port Authority on Sep-

tember 28, 1987. On August 15, 1991, while assisting a fellow police officer make an arrest, Walker was injured when the arrestee pushed and hit her. As a result, Walker sustained injuries to her back which her personal physician diagnosed as cervical radiculopathy with herniated discs.

On or about August 22, 1991, Walker was ordered to submit to an examination by Dr. Martin Duke, an employee of the Port Authority Office of Medical Services. Dr. Duke determined that Walker's injury was sustained in the line of duty and that Walker should not return to work immediately.

Walker was examined by her personal physician and by the Port Authority medical staff several times during the next two months. Finally, on October 28, 1991, Walker was examined by Dr. Taubman of the Port Authority Office of Medical Services who concluded that she was physically fit and should return to work, though she should receive a medically restricted assignment, *i.e.*, light duty. Plaintiff claims that Dr. Taubman ignored her complaint of continued pain and a loss of function of the left hand and arm. On this same day, Walker's personal physician determined that she would not be fit to return to work until, at the earliest, November 12, 1991. The Port Authority Office of Medical Services never consulted with Officer Walker's personal physician regarding his diagnosis.

Officer Walker did not return to work. As a result, she was listed as absent without leave on October 29, 1991, and her pay was suspended. Plaintiff was ordered to report for medical examinations by the Port Authority's doctors several times in the next few months. Plaintiff contends that during some of these meetings, she was not actually examined by the medical staff. On February 8, 1992, Walker was advised by letter that based on examinations performed by the Port Authority Office of Medical Services, the Port Authority had determined that she was fit for duty. The letter further advised her that as a result of her failure to report for work, a recommendation was being made for her termination.

On March 10, 1992, Walker was charged with insubordination for being absent without leave. These charges were pending before the Port Authority Trial Board (the "Board") at the time that this lawsuit was filed. Plaintiff claims that the sole issue to be determined at these proceedings is whether Walker had reported to work or not; in other words, the denial of Walker's benefits and her ability to return to work would not be addressed before the Board. The procedures governing disciplinary proceedings are attached to the collective bargaining agreement as Document H, and there is no contention in the complaint that these procedures are violative of due process.

On August 27, 1992, after the complaint was filed, Walker's disability pension application was granted by the New York State Police and Fire Retirement System. Axelrod Aff. at ¶ 11 & Ex. D. The pension was made effective, retroactively, to February 18, 1992. *Id.* at Ex. E. Plaintiffs appear to contend that this controversy is not moot because "[h]ad Ms. Walker been paid a proper salary pursuant to her collective bargaining agreement, her pension would have gone into effect after September 1, 1992, thereby resulting in her loss of approximately six-and-a-half months of additional pensionable salary." *Id.* at ¶ 11. Defendants do not contend that the controversy is moot in their memorandum in support of the motion to dismiss, nor did they raise that argument at oral argument. *See Brock v. Roadway Express, Inc.*, 481 U.S. 252, 258, 107 S.Ct. 1740, 1745–46, 95 L.Ed.2d 239 (1987) (due process challenge of constitutional adequacy of procedures not moot because controversy falls within "capable of repetition, yet evading review" exception to case-and-controversy requirement).

*The Collective Bargaining Agreement*

Section XIX(3)(a) of the Memorandum of Agreement between the Port Authority of New York and New Jersey and the Port Authority Police Benevolent Association, Inc. (the "collective bargaining agreement") provides, in relevant part, that any police officer on sick leave because of an injury incurred in the line of duty will receive his base annual salary plus all applicable benefits for a period not to exceed two years. The agreement also provides that the Superintendent of Po-

lice shall make the determination whether a police officer's absence from duty results from an injury incurred in the line of duty, and consequently whether the police officer is entitled to line of duty sick leave. The Port Authority Office of Medical Services investigates absences to determine whether, and for how long, a police officer is entitled to line of duty sick leave. Police officers are not given the opportunity at a pre-determination hearing to prove either that they were injured in the line of duty or that their medical condition would entitle them to sick leave.

Appendix "G" of the collective bargaining agreement sets forth the grievance-arbitration procedures which are applicable to "alleged violations of any provision" of the collective bargaining agreement, with certain exceptions not relevant here. The procedures provide three separate "steps." In broad strokes, Step One permits the grievant to complain in writing to the Superintendent of Police, and to appeal to the Manager of the Labor Relations Division of the Human Resources Department if the grievance has not been settled within ten days. Step Two requires the Manager of the Labor Relations Division to issue a written determination of an appeal from Step One within twenty working days. Any unsettled grievance can be appealed to arbitration as set forth in great detail in Step Three. An arbitrator is selected in accordance with the then-effective Voluntary Labor Arbitration Rules of the American Arbitration Association. The president of the Benevolent Association has the exclusive right to refer to arbitration any unsettled grievance with respect to the application or interpretation by the Port Authority of any provision of the collective bargaining agreement. In addition, the grievant is entitled to representation by the Benevolent Association at any grievance or arbitration meetings.

Officer Walker did not make use of the grievance procedures set forth in the collective bargaining agreement. At oral argument, plaintiffs conceded that the denial of line of duty sick leave is subject to the grievance procedures set forth in the collective

bargaining agreement. Transcript of Proceedings, January 7, 1993 ("Tr.") at 9.

*The Complaint*

The complaint sets forth five claims for relief. First, the proposed plaintiff class claims that members of the class have been deprived of a property interest in their contractual right to paid sick leave benefits. Complaint ¶¶ 42–43. Second, the proposed plaintiff class claims that its members have been denied equal protection of the law because they are subject to discipline for work they miss, whereas Port Authority Police management personnel and other civilian employees are not. Complaint ¶ 40. Third, plaintiffs claim that by "actually or constructively terminating medical paid sick leave by ordering a police officer to return to duty without providing them with written documentation or a procedural hearing, the defendants have deprived plaintiff police officers of their property interests and freedom of expression in being treated for their medical injuries pursuant to the First Amendment." Complaint ¶ 41. Fourth, plaintiffs repeat the claim that members of the proposed plaintiff class have been deprived of medical benefits without due process of law; they also claim that the deprivation of medical benefits violated the equal protection rights of the members of the proposed plaintiff class. Complaint ¶¶ 42–43. Finally, plaintiffs claim that the disciplining of Police Officers for missing work "as a result of absences which have occurred in the line of duty," violates the due process rights of the members of the proposed plaintiff class. Complaint ¶ 44.

As relief, plaintiffs seek (1) a declaration that the grievance procedures outlined in the collective bargaining agreement violate the plaintiffs' due process, equal protection, and first amendment rights; (2) injunctive relief to remedy these alleged defects; and (3) back pay and reinstatement.

## DISCUSSION

1. *Plaintiffs' Due Process Claims*

As we understand them, plaintiffs' first, third, fourth, and fifth causes of action essentially allege that the proposed plaintiff class has a "property" right under the fourteenth

amendment to line of duty sick leave and that the defendants have deprived them of that right without due process of law. *See* Pls.' Mem. at 8. Specifically, the proposed plaintiff class contends that its members have been denied due process because they were not given the opportunity to present evidence of entitlement to line of duty sick leave *prior* to the determination by the Port Authority that they were ineligible. They also contend that the grievance procedure set forth in the collective bargaining agreement is constitutionally inadequate because once the Port Authority determines that a police officer is no longer entitled to line of duty sick leave, that officer is ordered back to work. If the officer does not return to work—because she believes that her medical condition would make this inappropriate— she will be listed as absent without leave, and her salary will be suspended. Plaintiffs argue that this economic hardship—loss of livelihood—during the pendency of the grievance proceedings renders the grievance procedures constitutionally inadequate.

■ To state a claim under § 1983, a complaint must allege that the defendants deprived the plaintiffs of a right secured by the Constitution or laws of the United States and that such deprivation was committed by persons acting under color of state law. 42 U.S.C. § 1983. Where the right alleged to have been denied is protected by the fourteenth amendment, the plaintiffs must establish that the deprivation was without due process of law. *Costello v. Town of Fairfield*, 811 F.2d 782, 784 (2d Cir.1987). The Port Authority is a state actor for the purposes of § 1983. *See, e.g., Raysor v. Port Authority of New York & New Jersey*, 768 F.2d 34 (2d Cir.1985), *cert. denied*, 475 U.S. 1027, 106 S.Ct. 1227, 89 L.Ed.2d 337 (1986).

■ We engage in a two-step analysis when resolving procedural due process claims. The threshold issue is whether plaintiffs assert a property interest protected by the Constitution. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985); *Board of Regents v. Roth*, 408 U.S. 564, 574, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972); *Strong v. Board of Educ. of Uniondale Union Free*

*School Dist.*, 902 F.2d 208, 211 (2d Cir.), *cert. denied*, 498 U.S. 897, 111 S.Ct. 250, 112 L.Ed.2d 208 (1990); *Narumanchi v. Board of Trustees of Connecticut State University*, 850 F.2d 70, 72 (2d Cir.1988). If a protected interest is identified, the second step is to determine whether the defendants deprived the plaintiffs of that interest without due process. *Loudermill*, 470 U.S. at 542–43, 105 S.Ct. at 1493–94; *Narumanchi*, 850 F.2d at 72. We will consider each step in turn.

### a. *Property Interest*

■ Property interests subject to procedural due process protection are not created by the Constitution; rather they are created and defined by "existing rules or understandings that stem from an independent source such as state law." *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709. In *Roth*, the Supreme Court stated:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

*Id.* A person's interest in a benefit constitutes a "legitimate claim of entitlement" if it is supported by contractual or statutory language that might be invoked at a hearing. *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972); *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709.

■ A collective bargaining agreement is, of course, a contract between employer and employees. As such, it is not surprising, based on the broad language contained in *Roth*, that courts have uniformly held that a collective bargaining agreement can be the source of a property right entitled to due process protection. *See, e.g., Brock v. Roadway Express, Inc.*, 481 U.S. 252, 260–61, 107 S.Ct. 1740, 1747, 95 L.Ed.2d 239 (1987) (plurality opinion) (employer's right to discharge an employee for cause pursuant to collective bargaining agreement is property interest protected by fifth amendment); *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir.1991) (collective bargaining agreement providing that employee could not be fired

without just cause creates property right under due process clause); *Johnston–Taylor v. Gannon*, 907 F.2d 1577, 1581 (6th Cir.1990) (collective bargaining agreement providing professor with right to "continuing employment" created protected property interest which could only be terminated in accordance with due process); *Handley v. Phillips*, 715 F.Supp. 657, 671 (M.D.Pa.1989) (plaintiffs' expectation of continued employment based on collective bargaining agreement constitutes property interest); *see also New Castle County Vocational Technical Educ. Ass'n v. Board of Education*, 569 F.Supp. 1482, 1485 (D.Del.1983) ("language in a collective bargaining agreement can create a property interest which implicates due process") (quoting *Hayes v. City of Wilmington*, 451 F.Supp. 696, 705–06 (D.Del.1978)). Thus, the issue in this case is not whether a collective bargaining agreement can create a protected property interest, for it can. Rather, the issue is whether the right that this particular collective bargaining agreement allegedly creates—a right to line of duty sick leave—is a property right which is subject to due process protection.

The Supreme Court has held that a property interest in continuing public employment can be created, either by statute or contract, where the state is barred from terminating (or not renewing) the employment relationship without cause. *Compare Loudermill*, 470 U.S. at 538–39, 105 S.Ct. at 1491 (property interest created by state civil service statute's "for cause" termination provision) *with Bishop v. Wood*, 426 U.S. 341, 345, 96 S.Ct. 2074, 2084, 48 L.Ed.2d 684 (1976) (no property interest due to absence of "for cause" provision). There is uncertainty, however, over whether other public employment benefits—such as pension benefits, disability benefits, accrued overtime pay, or compensatory time off—can constitute property which is subject to due process protection. *See generally Portman v. County of Santa Clara*, 995 F.2d 898, 905–06 (9th Cir. 1993) (whether entitlement to certain public employment benefits is a constitutionally protected property interest is an "open question").

The Second Circuit has recognized that public employees can have a "property" right to certain disability retirement and pension benefits. *See Russel v. Dunston*, 896 F.2d 664, 668–69 (2d Cir.) (disability retirement benefits), *cert. denied*, 498 U.S. 813, 111 S.Ct. 50, 112 L.Ed.2d 26 (1990); *Winston v. City of New York*, 759 F.2d 242, 247–49 (2d Cir.1985) (pension benefits); *Basciano v. Herkimer*, 605 F.2d 605 (2d Cir.1978) (disability retirement benefits), *cert. denied*, 442 U.S. 929, 99 S.Ct. 2858, 61 L.Ed.2d 296 (1979). In these cases, however, the source of the "property right" was not a collective bargaining agreement. In *Russel* and *Winston* the right arose under Article V of the New York State Constitution which provides that "membership in any pension or retirement system of the state or of a civil division therefore shall be a contractual relationship, the benefits of which shall not be impaired." N.Y. Const. art. V, § 7. In *Basciano* the right arose under the Administrative Code of the City of New York.

We think this distinction is critical in light of the Second Circuit's attempted definition of the kinds of rights, created by contract, which are entitled to due process protection. In *S & D Maintenance Co. v. Goldin*, 844 F.2d 962 (2d Cir.1988), the court addressed, in the context of a dispute concerning a public contract to maintain parking meters,[1] the kinds of interests that the Supreme Court has thus far viewed as "property" entitled to due process protection. After first noting that every contract with a state could arguably be thought of as giving rise to

---

1. We recognize that *S & D Maintenance* arose in a factually distinguishable context, for it concerned a government contract to maintain parking meters as opposed to employment benefits under a collective bargaining agreement. Nevertheless we do not believe that this undermines its significance to the issues presented in the instant lawsuit. For in that case the Second Circuit specifically discussed the scope of *Roth* and its progeny. The discussion in *S & D Maintenance*

was clearly intended to have broader application than the facts before the panel. *See Bell v. Westmoreland Central School Dist.*, 87–CV–1592, 1991 WL 33161 at *2–3 (N.D.N.Y. March 11, 1991) ("After *S & D Maintenance*, at least in this Circuit, there can be no doubt that a constitutionally protected property interest in the continuation of post-retirement health insurance benefits does not exist" where the right to receive said benefits arises under an employment contract).

a "legitimate claim of entitlement" which would fall within the broad definition of "property" under *Roth,* the Court wrote:

> *Goldberg v. Kelly* [, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1972),] involved entitlement to welfare benefits conferred by statute upon our poorest citizens to provide for their immediate well-being, if not survival. *See also Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (due process protection for social security benefits). *Board of Regents v. Roth, supra,* and *Perry v. Sindermann, supra,* concerned claims to tenured status in public employment.... In these contexts, the Due Process Clause is invoked to protect something more than an ordinary contractual right. Rather procedural protection is sought in connection with a state's revocation of a *status,* an estate within the public sphere characterized by a quality of either extreme dependence in the case of welfare benefits, or permanence in the case of tenure, or sometimes both, as frequently occurs in the case of social security benefits.

844 F.2d at 966. (footnote omitted). The court also noted that "the course of the law in this Circuit has not moved beyond according procedural due process protection to interests other than those well within the contexts illustrated by *Goldberg* and *Roth." Id.* at 967. *See also Unger v. Nat'l Residents Matching Program,* 928 F.2d 1392, 1399 (3d Cir.1991) (embracing distinction set forth in *S & D Maintenance* ).

On one occasion the Second Circuit has considered whether an employment benefit created by a collective bargaining agreement constitutes property under the due process clause and answered that question in the negative. In *Costello v. Town of Fairfield,* 811 F.2d 782 (2d Cir.1987), two retired employees brought suit claiming that their employer, the Town of Fairfield, had denied them certain pension benefit increases provided for in a collective bargaining agreement without due process of law. The dispute arose because the plaintiffs, who had been employed when the collective bargaining agreement was signed, retired approximately four months before the benefit increases in question went into effect. While all three members of the panel agreed that the complaint should be dismissed, the panel divided as to the rationale. Two judges first distinguished the case from *Basciano* where the court had held that a city employee who had been denied disability retirement benefits had a "property" interest in those benefits. Mr. Costello's claim was different, the majority concluded, because he was only claiming entitlement to an *increase* in benefits, as opposed to his *entire* basic retirement benefits as was the claim in *Basciano.* The majority further believed that the complaint in essence sounded in contract, and should be dismissed on that basis. They wrote:

> [B]efore undertaking to determine if there is an entitlement to an increase [in benefits], there first should be a resolution of the dispute concerning whether the claimed increase is due. Clearly, it is the interpretation of a contract term that is at issue here and the appellants have pursued this contract dispute in the district court under the guise of a due process violation. A contract dispute, however, does not give rise to a cause of action under section 1983.

811 F.2d at 784.[2]

Although the question is not free from doubt, in this Court's view the authorities cited above suggest that the proposed plaintiff class' right under the collective bargaining agreement to line of duty sick leave is not a "property" interest for due process purposes. In *Russel, Winston,* and *Basciano* the right to the benefits in question arose under a provision of the New York State Constitution or the New York City Code.

---

2. Judge Van Graafeiland, in his concurrence, disagreed that this was a contract dispute because the plaintiffs "consistently have taken the position that the grievance procedure provided in their collective bargaining agreement failed to afford them due process of law." *Costello,* 811 F.2d at 785 (Van Graafeiland, J. concurring). He therefore concluded that the plaintiffs had stated a colorable claim for deprivation of a property interest without due process of law. On the merits, Judge Van Graafeiland agreed with the majority that the grievance procedures set forth in the collective bargaining agreement had accorded plaintiffs "all the process they were due." *Id.* at 786.

Other jurisdictions have also recognized that the right to similar benefits, when created by statute, are property rights entitled to protection under the fourteenth amendment. *See, e.g., Cholewin v. City of Evanston,* 716 F.Supp. 369, 372 (Illinois statute which provides for sick leave for officers injured in line of duty creates property interest under *Roth* ), *aff'd,* 899 F.2d 687 (7th Cir.1990); *Hairston v. District of Columbia,* 638 F.Supp. 198, 202 (D.D.C.1986) (District of Columbia statute which provides for administrative sick leave for officers injured in line of duty creates a property interest under *Roth* ). We think the difference in this case lies in the fact that the right to line of duty sick leave is created in a contract, *i.e.,* a collective bargaining agreement. While there may be no limit to the categories of "property" rights which a legislature can create by statute, this Court does not believe that the same can be said of "property" rights created by a collective bargaining agreement.

Further, we do not believe that the deprivation of line of duty sick leave amounts to a deprivation of a status characterized either by "extreme dependence" or "permanence" under *S & D Maintenance. See* 844 F.2d at 967. Line of duty sick leave is a temporary benefit, in this case not to exceed two years, the receipt of which is conditioned on the existence of a medical disability sustained in the line of duty. The conditional right to receive line of duty sick leave under the collective bargaining agreement is more akin to "an ordinary contract right" than an indefinite guarantee of continued employment under *Roth* for the simple reason that it is quantifiable rather than intangible. Furthermore, the denial of line of duty sick leave does not necessarily result in a loss of livelihood.[3]

We also believe that the case at bar is more similar to *Costello* than to *Russel, Winston,* and *Basciano* because plaintiff Officer Walker was not denied line of duty sick leave

entirely; rather she was merely denied a further extension of those benefits. As in *Costello,* the proposed plaintiff class in this case is attempting to turn what is essentially a contract dispute into a federal constitutional claim; this, of course, is impermissible. *See also Brown v. Brienen,* 722 F.2d 360, 365 (7th Cir.1983) (expressing doubt that due process protection extends to public employee's contractual right to compensatory time off); *Bell v. Westmoreland Central School District,* No. 87–CV–1592, 1991 WL 33161 at *3 (N.D.N.Y. March 11, 1991) (public employee's claim of entitlement under contract to post-retirement health insurance benefits is not a property interest entitled to protection under due process clause); *cf. Bollenbach v. Monroe–Woodbury Central School Dist.,* 659 F.Supp. 1450, 1474 n. 39 (S.D.N.Y.1987) ("It is only where a breach of contract results in the loss of employment that it can be equated with the deprivation of a property interest") (quoting *Waltentas v. Lipper,* 636 F.Supp. 331, 335 (S.D.N.Y.1986)).

Accordingly, we hold that a public employee's right to receive line of duty sick leave under a collective bargaining agreement is not a "property right" under the fourteenth amendment.

b. *Due Process*

■ Even if we were to assume arguendo that the members of the proposed plaintiff class had a protected property interest in line of duty sick leave, this Court concludes that there has been no deprivation of that property interest without due process of law. This Court believes that the procedures set forth in the collective bargaining agreement satisfy the requirements of the fourteenth amendment, for plaintiffs have not asserted any reasonable basis for finding the grievance procedures inadequate. Due process "is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge,* 424 U.S. 319,

---

**3.** Officer Walker's complaint and opposition papers suggest that the Port Authority's denial of further extensions of line of duty sick leave benefits lead the Port Authority to list her as absent without leave and to suspend her pay. However, this Court does not believe that the Port Authority's denial of further sick leave benefits is the proximate cause of the suspension of Officer Walker's salary: rather, it was Officer Walker's decision not to return to work which lead to this result.

334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976). Three factors are to be considered in determining whether a particular procedure satisfies due process:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews,* 424 U.S. at 335, 96 S.Ct. at 903; *see also Strong v. Uniondale Union Free School District,* 902 F.2d 208, 211 (2d Cir.1990).[4] The root requirement of due process is the opportunity to be heard which must be granted at a meaningful time and in a meaningful manner.

Obviously the proposed plaintiff class members' interest in line of duty sick leave is significant, though not as substantial as an individual's interest in keeping his job. *See Cholewin v. City of Evanston,* 899 F.2d 687, 690 (7th Cir.1990) ("the plaintiff in *Loudermill* had a stronger interest in his job than [the plaintiff in the instant case] has in injured-on-duty pay because job termination includes an element of discipline as well as a similar loss of pay"). However, the procedures set forth in the collective bargaining agreement minimize the risk of an erroneous determination, as is evident from an examination of plaintiff Officer Walker's experience. Officer Walker was examined several times by several different members of the Port Authority medical staff. In addition, a number of medical tests were performed on her to determine whether her medical condition was such that she remained eligible for line of duty sick leave. The elaborate three step grievance procedure set forth in the collective bargaining agreement provides further assurance of the reliability of the eligibility determination, and would have provided Officer Walker with an opportunity to be heard had she elected to invoke the procedures.

While it is true that Officer Walker was not afforded a trial-type hearing to challenge the diagnosis of the Port Authority doctors before the determination was made by the Port Authority that she was no longer eligible for line of duty sick leave, due process does not require, in every instance, a predetermination hearing. *Cafeteria & Restaurant Workers Union, Local 473, AFL–CIO v. McElroy,* 367 U.S. 886, 894, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961). Even in cases where a predetermination hearing is required, "an initial check" to determine

---

4. We note our disagreement with defendants' position that the process afforded to the proposed plaintiff class in the collective bargaining agreement is, as a matter of law, all that the Constitution requires. Post-deprivation arbitration of grievances provided for in a collective bargaining agreement can fail to satisfy the requirements of due process. *See Parrett v. City of Connersville,* 737 F.2d 690, 694–95 (7th Cir.1984) (grievance procedure in collective bargaining agreement, as applied, did not provide constructively discharged police officer with due process); *Bauschard v. Martin,* 91 C 7839, 1993 WL 79259 (N.D.Illinois March 16, 1993) (procedures set forth in collective bargaining agreement did not satisfy due process requirements because they did not afford police officer opportunity to challenge determination that he was psychologically unfit); *Burka v. New York City Transit Authority,* 744 F.Supp. 63 (S.D.N.Y.1990) (arbitration process outlined in collective bargaining agreements failed to provide employees subject to drug testing with due process).

Nor is it dispositive that the collective bargaining agreement, which is the source of the "right" in question, also contains a deprivation procedure concerning that right. The Supreme Court has specifically rejected, in the context of statutorily created "property" rights, the so-called "bitter with the sweet" argument, *i.e.,* that a property right created by statute is only as broad as the procedures promulgated by the legislature to vindicate that right. *See Loudermill,* 470 U.S. at 541, 105 S.Ct. at 1493. Judge Wood has noted that this same logic would apply where a collective bargaining agreement creates both a right and a procedure governing the deprivation of that right: "because I have determined that the [collective bargaining agreement] gave a property right to continued employment, I next must consider whether the [agreement] provided the constitutionally minimum process due" the plaintiff. *Murphy v. Wack,* 89 Civ. 3300 (KMW), 1991 WL 64193 at *5 (S.D.N.Y. April 18, 1991). *See also Burka,* 744 F.Supp. at 66 (individual's entry into collective bargaining agreement did not constitute waiver of due process rights under constitution).

whether there are reasonable grounds to support the proposed action is sufficient. *Loudermill*, 470 U.S. at 545–46, 105 S.Ct. at 1495. In the instant case, the examinations by the Port Authority medical staff constituted such an "initial check." The Port Authority doctors' diagnoses were objective determinations made by trained medical professionals and did not involve the exercise of unchecked discretion. *See Basciano*, 605 F.2d at 610 (when making determination of eligibility for accident disability retirement benefits, responsibility of physicians "was to make a medical judgment, not to function as adversaries or advocates").

 Finally, the probable value of additional predetermination procedures is dubious.[5] Plaintiffs propose that the Port Authority medical staff be required to consult with the officer's personal physician before making an eligibility determination. We note, however, that under the current procedure nothing would prevent an officer from informing the Port Authority medical staff, either orally or in writing, of her physician's diagnosis. Furthermore, there is no guarantee that this additional procedure would have enhanced the reliability of the eligibility determination. In *Basciano* the Second Circuit noted:

> While questions of credibility and veracity often are best resolved in a trial-type hearing, we believe that evidence relevant to a

medical determination can be presented as effectively in writing as orally. Moreover, the value of cross-examination to discredit a professional medical opinion at best is limited. A trial-type proceeding before the Trustees [as proposed by the plaintiff] would require the resolution of conflicting medical opinions by lay administrators. We know of no evidence that this would assure a more reliable final determination sufficient to make this an element of due process.

*Id.* at 610–11. *Cf. McDarby v. Dinkins*, 907 F.2d 1334, 1337 (2d Cir.1990) (procedures to determine plaintiff's disability pension eligibility satisfy requirements of due process).

Of course, a mere difference of opinion between Officer Walker's doctor and the doctors who examined her on behalf of the Port Authority does not establish that the Port Authority's eligibility decision was unreasonable. *Basciano*, 605 F.2d at 610. Accordingly, plaintiffs' first, third, fourth, and fifth causes of action are dismissed, to the extent that they allege violations of due process.[6]

### 2. *Plaintiffs' Equal Protection Claim*

Plaintiffs' equal protection claim, as set forth in the second and fourth causes of action, receives scant attention in their papers in opposition to the motion to dismiss, and deservedly so. Construing plaintiffs' second and fourth causes of action liberally,

---

5. The grievance procedures outlined in the collective bargaining agreement have strict time limits at each "step." Although the Supreme Court has held that "[a]t some point, a delay in the post-termination hearing would become a constitutional violation," *Loudermill*, 470 U.S. at 547, 105 S.Ct. at 1496, we do not believe that the delay that would be experienced during the operation of the grievance procedures reaches that point. Furthermore, Officer Walker's failure to submit to the grievance procedures precludes consideration of the fairness of those proceedings in practice. *Narumanchi*, 850 F.2d at 71; *cf. Parrett*, 737 F.2d at 697 (finding that union grievance machinery, though not "inherently inadequate," did not satisfy due process "as administered in the present case").

6. In *Ramsey v. Board of Education*, 844 F.2d 1268 (6th Cir.1988), the Sixth Circuit held that "interference with a property interest in a pure benefit of employment as opposed to an interest in the tenured nature of employment itself, is an

interest that can be and should be redressed by a state breach of contract action and not a federal action under section 1983." *Id.* at 1274–75. The court concluded that the due process clause protects a property interest in continuing employment because the tenured employee who is terminated "has suffered the loss of a property interest that, because of its special nature, is neither easily defined nor easily compensated by a typical breach of contract action." *Id.* at 1274. In contrast, the public employee who suffers a loss in "a specific benefit, term or condition of employment, suffers a loss which is defined easily." *Id.*

While we find the reasoning in *Ramsey* persuasive, since the parties did not address the adequacy of state remedies available to the proposed plaintiff class, and since we believe the grievance procedures in the collective bargaining agreement provided members of the proposed plaintiff class with all the process to which they were entitled, we do not rely on *Ramsey* to support the result we reach today.

plaintiffs appear to contend that the fact that police officers are subject to discipline for missing work, while management personnel and other civilian employees are not, violates the equal protection clause of the fourteenth amendment.

The equal protection clause of the fourteenth amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. The constitutional guarantee is "the right to be free from invidious discrimination in statutory classifications and other governmental activity." *Harris v. McRae*, 448 U.S. 297, 322, 100 S.Ct. 2671, 2691, 65 L.Ed.2d 784 (1980). The proposed plaintiff class is subject to a collective bargaining agreement which contains a provision for discipline of repeated and excessive absences. It is those very provisions that plaintiffs challenge as violative of equal protection on the grounds that the Port Authority management and civilian employees are not subject to the same contractual provisions.

We think that plaintiffs' equal protection claim is meritless for several reasons. First, the proposed plaintiff class and Port Authority management and civilian employees cannot properly be considered similarly situated since the proposed plaintiff class is subject to the contract and the other classes of employees are not. Second and more fundamentally, the Port Authority did not unilaterally impose the classification challenged by plaintiffs on the proposed plaintiff class; this classification is the result of a collectively bargained contract entered into by the Port Authority and the proposed plaintiff class.

Finally, even if the various classes of employees were considered similarly situated, the plaintiffs' equal protection claim would likely still fail. The Equal Protection Clause "does not deny to States the power to treat different classes of persons in different ways." *Reed v. Reed*, 404 U.S. 71, 75, 92 S.Ct. 251, 253, 30 L.Ed.2d 225 (1971). Unless the challenged policy creates a classification that operates to disadvantage a suspect class or interferes with the exercise of a fundamental right, it will be examined under the rational-basis test. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 313, 96 S.Ct. 2562, 2566–67, 49 L.Ed.2d 520 (1976). Although the Court has not had the benefit of briefing of the issue, we note that the Port Authority's disciplinary procedures have a rational relationship to any one of a number of legitimate goals, including the maintenance of a prepared, uniformed police force and the avoidance of rampant absenteeism which would, as a matter of logistics, inhibit the ability of the Port Authority police force to completely secure and protect the Port Authority premises.

Accordingly, plaintiffs' equal protection claim is wholly without merit and is therefore dismissed.

### 3. *Plaintiffs' First Amendment Claim*

Finally, in their third claim for relief plaintiffs allege that the defendants have violated the proposed plaintiff class' first amendment right to freedom of expression. Specifically, plaintiffs claim that the first amendment right of expression and association guarantees "the rights [sic] to treatment for medical injuries by the physician of one's choosing." Pls.' Mem. at 17. We conclude that plaintiffs' first amendment claim is without merit.

In the first place, the defendants never interfered with the proposed plaintiff class members' right or ability to obtain medical treatment from the doctor of their choice; indeed, Officer Walker was examined by her personal physician several times. The proposed plaintiff class' real objection is that the Port Authority does not consult with an officer's personal physician before making a determination of eligibility for line of duty sick leave. If that failure raises a constitutional question at all, it raises questions under the due process clause, not the first amendment.

Second, plaintiffs cite no relevant authority for the proposition that a public employee has a first amendment right to compel his employer to consult with the employee's personal physician before determining whether the employee is fit to return to work or is entitled to line of duty sick leave. Plaintiffs'

first amendment claim is meritless, and should be dismissed.[7]

## CONCLUSION

■ For the reasons set forth above, the complaint in this case is dismissed in its entirety as against all defendants. The only question remaining is whether sanctions should be imposed under Fed.R.Civ.P. 11. Rule 11 vests the district courts with discretion to award sanctions if, among other things, a party takes a position which is not "warranted by existing law or a good faith argument for the extension, modification, or reversal or existing law." Fed.R.Civ.P. 11. Plaintiffs' first amendment and equal protection allegations arguably would fall within this proscription. However, plaintiffs' due process allegations, though rejected by the Court, were not entirely frivolous. Accordingly, we conclude that sanctions are not appropriate under the circumstances of this lawsuit.

■ Finally, we note that the relief that plaintiffs seek in this case in essence amounts to a reformation of the collective bargaining agreement on terms more favorable to the employee class. This is relief the Court cannot and will not grant. It became obvious at oral argument that plaintiffs' counsel has been negotiating with the Port Authority for many years to attempt to address some of the perceived unfairness in the collective bargaining agreement. These negotiations have not met with success. Plaintiffs would be well-advised to seek the modifications of the collective bargaining agreement at the bargaining table, and not in a federal court.

Accordingly, defendants' motion to dismiss is granted, and the complaint is dismissed in its entirety. Defendants' motion for sanctions is denied.

SO ORDERED.

---

**7.** At oral argument, plaintiffs' counsel suggested that the defendants had denied proposed plaintiff class' "freedom of expression of being able to make yourself better." Transcript of Oral Argument, January 7, 1993, at 5. This Court believes that this contention is equally meritless.